George **RICHARDSON**, Plaintiff,

v.

**ST. CHARLES–ST. JOHN THE BAPTIST BRIDGE & FERRY AUTHORITY** and **St. Paul Fire & Marine Insurance Co.,** Defendants.

Civ. A. No. 67–815.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 16, 1967.

Orlando G. Bendana, New Orleans, La., for plaintiff.

J. Y. Gilmore, Jr., New Orleans, La., for St. Charles-St. John the Baptist Bridge & Ferry Authority.

Thomas C. Wicker, Jr., New Orleans, La., for defendant, St. Paul Fire & Marine Insurance Co.

RUBIN, District Judge:

George Richardson alleges he was employed as a deckhand on a ferry boat by the Bridge & Ferry Authority and that he was hurt in the course of his duties as a result of the negligence of the Bridge & Ferry Authority and the unseaworthiness of the ferry boat. He filed this suit against the Authority and its insurer under the Jones Act and the general maritime law. Each of the defendants filed motions to dismiss and alternative motions for summary judgment. The Authority says it is an agency of the State of Louisiana and immune to suit in the absence of authorizing legislation. The insurance company says its policy limits are $5,000.00 and the action should be dismissed because the judgment that could be rendered against it is less than the required jurisdictional amount. We will take these motions separately. In addition, we shall later

discuss the other motions that have been filed.

## SOVEREIGN IMMUNITY

The Authority was created by the Governor of Louisiana in reliance on the provisions of LSA–R.S. 48:1092. This statute gives the Governor the power to create a bridge and ferry authority.[1] Its last paragraph provides that:

"The authority is hereby declared to be a body corporate and politic, constituting an instrumentality of the state of Louisiana exercising public and essential governmental functions, and the exercise by the authority of the powers conferred by this Part in the acquisition, construction, operation and maintenance of bridges and ferries shall be deemed and held to be an essential governmental function of the state of Louisiana."

LSA–R.S. 48:1093 gives such an authority the right "* * . * to sue and be sued. * * *"

It is apparently conceded that the conditions set forth in the statute have been complied with and that the Authority is properly constituted in accordance with the procedure set forth in it. The question here raised is whether such an authority as an entity can be named as the defendant in a suit like this one.

Article 3, § 35 of the Louisiana Constitution, as amended in 1960, provides that:

"The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions * * * and authorities * * *; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability." ·

The Authority ignores this amendment, relying upon J. Ray McDermott & Co. v. Department of Highways, 5 Cir., 1959, 267 F.2d 317, in which the District Court held that "[t]he Department of Highways may not be sued *in tort* without the consent of the State of Louisiana." But the 1960 amendment to the Louisiana Constitution altered the result reached in *McDermott*. In Lambert v. Austin Bridge Company, La.App. 1 Cir., 1966, 189 So.2d 752, 755, the Court held that "the immunity formerly enjoyed by the Department of Highways under R.S. 48:22 has been effectively waived by the enactment of Article 3, Section 35 of the Constitution of 1921, as amended by Acts 1960, No. 621 * * *."

The same issue was recently considered by Judge Cassibry of this court in Belle Fontaine Towing Co., Inc. v. Department of Highways, E.D.La., 1967, 271 F.Supp. 60, and he concluded:

"Although in the past the Department [of Highways] was immune from suits of the instant type, J. Ray McDermott & Co. v. Department of Highways, 267 F.2d 317, (5th Cir. 1959); Westwego Canal and Terminal Co., Inc. v. Louisiana Highway Commission, 200 La. 990, 9 So.2d 389, a Louisiana appellate court has recently held that all immunity from suit (including tort) formerly enjoyed by the Department of Highways was effectively waived by enactment of the waiver of immunity provision of the 1921 Constitution as amended in 1960, LSA—Const. Art. III, § 35. Lambert v. Austin Bridge Company, La.App.1966, 189 So.2d 752, writ refused 249 La. 768, 191 So.2d 143; Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529 (1965)."

■ Since the statute that authorized the establishment of the Authority pro-

---

1. LSA–R.S. 48.1092 provides, in part, as follows:

"[W]henever the governor shall deem it in the public interest to do so, he may create a bridge and ferry authority * * *."

vides that the Authority can sue and be sued, its immunity has been waived.

■ A state may of course waive its immunity from suit in the state court but retain it in the federal courts. Chandler v. Dix, 1904, 194 U.S. 590, 24 S.Ct. 766, 48 L.Ed. 1129; Petty v. Tennessee-Missouri Bridge Commission, 1959, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed. 2d 804. However, this limitation is not applicable to the agencies and political subdivisions of the State if they are entities separate and distinct from the State. Schultz v. Greater New Orleans Expressway Commission, E.D.La., 1966, 250 F.Supp. 89; Belle Fontaine Towing Co., Inc. v. Department of Highways, E. D.La., 1967, 271 F.Supp. 60. Thus, if the Authority is a separate agency, it may be sued in federal court.

Schultz v. Greater New Orleans Expressway Commission, E.D.La., 1966, 250 F.Supp. 89, involved a diversity action against the Greater New Orleans Expressway Commission, a joint commission created by the Parishes of St. Tammany and Jefferson. The Expressway Commission was created by the provisions of LSA–R.S. 33:1321–33:1332. Pursuant to these acts, Louisiana parishes may create a joint commission as an agency of such parishes to engage jointly in the exercise of any power or the construction, acquisition or improvement of any public project or improvement. The parishes of St. Tammany and Jefferson set up this Commission to finance, construct and operate a causeway over Lake Pontchartrain connecting the two parishes. The Expressway Commission filed a motion to dismiss based on the State's immunity. In a well-reasoned opinion, Judge Ainsworth decided that the Commission was a political corporation with power to sue and be sued and did not enjoy the immunity granted to the states under the Eleventh Amendment. He decided that the Commission was an entity distinct from the State and thus not immune to suit.

The Authority and the Expressway Commission are agencies with similar purposes and functions. The Commission was set up under the provisions of LSA–R.S. 33:1332 which provides in part that "such commission shall be a body corporate under such corporate name and style as shall be provided in such agreement * * *." and there was no provision that the corporate body was to be considered a public body.

The statute under which the Authority was created, LSA–R.S. 48:1092, states that the Authority is "an instrumentality of the state of Louisiana exercising public and essential governmental functions * * *." However, this does not appear to be sufficient to deny the Authority status as a separate entity. It may not only sue and be sued, but may use a corporate seal, may acquire and sell property; make by-laws for the management and regulation of its affairs; appoint officers, agents, and employees; borrow money; make contracts; encumber its receipts; and issue bonds. LSA–R.S. 48:1093 and 48:1094.

■ Under these circumstances, the Authority appears clearly to be a separate entity. In this regard, it must be distinguished from the Louisiana Wildlife & Fisheries Commission, which was held in Ward v. Louisiana Wild Life & Fisheries Commission, E.D.La., 1963, 224 F. Supp. 252, aff'd, 5 Cir., 1965, 347 F.2d 234, to be immune from suit. The Wildlife & Fisheries Commission did not have power to sue and be sued, nor did it have the other powers discussed above.

Therefore, both the motion to dismiss and the motion for summary judgment filed by the Authority will be denied.

JURISDICTIONAL AMOUNT

The insurer's motion to dismiss for lack of jurisdictional amount raises the question whether a Jones Act suit is maintainable under 28 U.S.C.A. § 1337 as an action "arising under [an] Act of Congress regulating commerce," or must be brought under the general federal question jurisdiction of 28 U.S.C.A. § 1331. If such an action must be brought under § 1331 then the matter in controversy must exceed $10,000.00. On the other hand, if the Jones Act claim can

768

be brought under § 1337, no jurisdictional amount is required. The answer to the question which of these sections is applicable is not free from doubt, but policy considerations influence me to recognize that jurisdiction is based on § 1337.

■ This is a suit at law and a jury trial is demanded. When an action is brought in admiralty under the Jones Act, jurisdictional amount is not required.[2] But it is suggested that a different result should be reached when the injured seaman elects to proceed on what was once known as the law side. While several courts have said that this is so,[3] the Court has found no case reaching this result in which the court actually considered the applicability of § 1337.

The Jones Act was patterned after the Federal Employers' Liability Act[4] and extends to seamen benefits of the same type previously made applicable to railway workers.[5] In Imm v. Union Railroad Company, 1961, 289 F.2d 858, the Court of Appeals for the Third Circuit held that FELA suits arose under an act regulating commerce, and hence under § 1337 of the Judicial Code; therefore there was no requirement of jurisdictional amount. The court expressly reserved the question whether a like rule applied to Jones Act cases.

But Judge Sugarman was presented with that question in Brown v. Sinclair Refining Co., S.D.N.Y., 1964, 227 F.Supp. 714, and held that a United States District Court has jurisdiction of a Jones

Act suit at law regardless of jurisdictional amount. This is the result suggested as "the better view" in 2 Norris, The Law of Seamen, Section 676, page 831, and supported by Professor Wright, in his text on Federal Courts, § 32, page 92.

A contrary result is not required by any of the cases cited by counsel for the insurer. Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, simply held that a civil action *for a maritime tort* could not be brought under § 1331. The case did not consider the question of the jurisdictional basis of Jones Act claims. The Court likewise does not find any of the other cases cited by counsel for the insurer persuasive because there is no indication in any of the decisions that jurisdiction under 28 U.S.C.A. § 1337 was urged or considered.

■ Federal courts are necessarily expert in handling Jones Act litigation because, as the Third Circuit said in regard to FELA cases, "they have so much of it."[6] When a Jones Act suit is brought in admiralty, federal courts have jurisdiction regardless of jurisdictional amount.[7] Adopting the interpretation sought by the insurer here would carve out a small enclave in which only state courts would have Jones Act jurisdiction.

■ It is impossible to say what Congress intended about this because Congress apparently never considered it.[8]

2. 28 U.S.C.A. § 1333. See 1 Benedict on Admiralty (6th ed.) § 2, p. 3; Allsman v. Rhodes, E.D.La., 1941, 37 F.Supp. 122.

3. See, e. g., Wade v. Rogala, 3 Cir., 1959, 270 F.2d 280, 283; Turner v. Wilson Line of Massachusetts, 1 Cir., 1957, 242 F.2d 414, 416–417.

4. 45 U.S.C.A. § 51 et seq.

5. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * *." 46 U.S.C.A. § 688.

6. Imm v. Union Railroad Company, 3 Cir., 1961, 289 F.2d 858, 861.

7. See Note 2 supra.

8. It is true, of course, that a report of a committee of the Judicial Conference of the United States notes that "the only significant categories of 'Federal question' cases subject to the jurisdictional amount are suits under the Jones Act and suits contesting the constitutionality of State statutes" and that this language was repeated in the report of the Senate Committee on the Judiciary that recommended raising the jurisdictional amount under § 1331 and § 1332 from $3,000 to $10,000. See 2 U.S.Code, Congressional and Administrative News (1958) 3099, 3122, 3103, also quoted in part in

But the Jones Act is remedial and to require jurisdictional amount here would be inconsistent with the liberal purposes of the Act. Neither the words of the Jones Act nor the language of § 1331 precludes doing what I think Congress would have wished had it thought about the matter, and what I consider sound public policy: that is maintaining jurisdiction here on the basis that the Jones Act claim arises under an Act of Congress regulating commerce. Moreover, since one of the constitutional bases for enacting the Jones Act has been said to be the power of Congress to regulate commerce,[9] maintenance of jurisdiction under § 1337 seems consistent with the requirements of that section.[10] Hence, I conclude that jurisdiction is conferred by § 1337, and jurisdictional amount is not required.

If this Court has jurisdiction of the Jones Act claim under § 1337 and thus can submit that issue to a jury, then it also can submit to the jury the claim for unseaworthiness under the general maritime law and the claim for maintenance and cure. As the United States Supreme Court said in Fitzgerald v. United States Lines, 1963, 374 U.S. 16, 18–20, 83 S.Ct. 1646, 1649, 10 L.Ed.2d 720:

"For years it has been a common, although not uniform, practice of District Courts to grant jury trials to plaintiffs who join in one complaint their Jones Act, unseaworthiness, and maintenance and cure claims when all the claims * * * grow out of a single transaction or accident * * *. Requiring a seaman to split up his lawsuit, submitting part of it to a jury and part to a judge, unduly complicates and confuses a trial * * *. In the absence of some statutory or constitutional obstacle, an end should be put to such an unfortunate, outdated, and wasteful manner of trying these cases. Fortunately, there is no such obstacle."

## MAINTENANCE AND CURE

■ The insurer argues that, as to it, the demand for maintenance and cure should be dismissed because its policy expressly excludes liability for such claims. The policy says in no uncertain terms that it "does not apply to the liability of the insured to provide transpor-

1 Moore's Federal Practice ¶ 0.60 [8.–3], pp. 628–629, n. 36. However, the observations were made merely in reference to the expected effect of the proposed changes on the number of cases that could then be brought under § 1331 and § 1332. The reports did not consider the advisability of removing any jurisdictional amount requirements for Jones Act suits. Thus, I do not find the language of the reports, or the failure of Congress to enact changes in light of the observations made in the reports, persuasive in suggesting that Congress wishes to limit jurisdiction to § 1331.

9. O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 39, 63 S.Ct. 488, 87 L.Ed. 596.

10. "When the words were used in 1911 'acts regulating commerce' pretty clearly meant 'The Act to Regulate Commerce' (that is, the Interstate Commerce Act of 1887) and its amendments and related legislation, dealing with railroads and other transportation agencies. The early application of the words was in this field. Other sections were relied on then (as they still are) to cover cases under other Acts of Congress based on the commerce power, namely Judicial Code, § 24, par. 7 (trade marks), and § 24, par. 23 (anti-trust proceedings). It was apparently the common understanding that those other sections were still needed, which could only mean that 'acts regulating commerce' meant 'acts regulating transportation.'

"Whether this was the original meaning or not, recent cases make it clear that it is not the present one. 'Acts regulating commerce' are coming rapidly to mean all acts whose constitutional basis is the commerce clause." Bunn, Jurisdiction and Practice of the Courts of the United States § 11, pp. 71–72 (1949).

See also Imm v. Union Railroad Company, 3 Cir., 1961, 289 F.2d 858, 860 n. 3, in which the court lists the statutes which have been held to be acts "regulating commerce" under § 1337 and its predecessor.

tation, wages, maintenance and cure to any such employee," and the motion for summary judgment on this issue, as to the insurer only, is therefore granted.

## REDUCE PLAINTIFF'S DEMANDS AS TO INSURER

 The insurer also argues that all claims in excess of $5,000.00 should be stricken as to it. As the policy expressly limits the insurer's liability in this type of situation to $5,000.00, the motion is granted. See Robinson v. Lull, N.D.Ill., 1956, 145 F.Supp. 134, 138.

## MORE DEFINITE STATEMENT

The insurer wants the court to compel the plaintiff to:

(1) "Set forth with particularity the manner in which defendants failed to provide plaintiff with a safe place to work;"

(2) "Set forth with particularity the alleged incompetence of the master, officers and co-employees;"

(3) "Set forth with particularity the rules and regulations which defendants failed to promulgate;"

(4) "Set forth with particularity the manner in which defendants failed to provide for * * * plaintiff's safety under the circumstances;"

(5) "Set forth with particularity the dangers which defendants allegedly failed to warn the plaintiff of;" and

(6) "Set forth with particularity the manner in which the [vessel] was unseaworthy."

The plaintiff has set forth ample information to enable the defendants to plead. The complaint fulfills adequately all the functions of notice pleading under the Federal Rules of Civil Procedure. In order to prepare for trial, the defendant needs to know the details it now seeks to elicit; but there are ample

discovery procedures available, and the Rules contemplate that such details will be obtained by discovery not by motions for bills of particulars.[11]

The motion is therefore denied.

---

**11.** See Conley v. Gibson, 1957, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80; Cmax, Inc. v. Hall, 9 Cir., 1961, 290 F. 2d 736, 738; Fennell v. Svenska Amerika Linien A/B, D.C.Mass., 1958, 23 F.R.D. 116, 117; 1A Barron & Holtzoff (Wright ed.) § 255, p. 76; 2A Moore's Federal Practice, 2d Ed., ¶ 8.13, p. 1703.