**LAND AND LAKE TOURS, INC., Appellee,**

v.

**Drew LEWIS, Secretary of Department of Transportation; United States Coast Guard, Appellants.**

**No. 83–1871.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1984.

Decided July 12, 1984.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., W. Asa Hutchinson, U.S. Atty., Fort Smith, Ark., Robert S. Greenspan, Marc Richman, Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for appellants.

David B. Switzer, Q. Byrum Hurst, Jr., Hot Springs, Ark., for appellee.

Before BRIGHT, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Drew Lewis,[1] Secretary of the Department of Transportation, and the United States Coast Guard appeal from a final order of the District Court for the Western District of Arkansas granting summary judgment in favor of Land & Lake Tours, Inc. (hereafter L & L). For reversal appellants argue that the district court erred in determining that the Coast Guard lacked jurisdiction to conduct safety inspections of L & L's amphibious vehicles operating on Lake Hamilton, Arkansas. For the reasons discussed below, we reverse.

Since 1962 L & L has operated a business conducting sightseeing tours in Garland County, Arkansas. L & L transports tourists in ten World War II vintage amphibious vehicles called DUKWs, but commonly referred to as "ducks." These vehicles carry up to twenty-two passengers, who are shown a number of attractions in and around Hot Springs, Arkansas, and over the waters of Lake Hamilton. Between 1962 and 1976, the state regulated L & L's business.

In 1976 a representative of the Coast Guard informed L & L that the agency was assuming jurisdiction over the inspection of the "ducks" pursuant to 46 U.S.C. §§ 390(b), 390a (repealed 1983).[2] These statutes required the Coast Guard to conduct triennial safety inspections of the vehicles and set minimum federal specifications for passenger-carrying vessels. Although L & L attempted to comply, allegedly at great expense, the Coast Guard continued to cite L & L for safety violations and required certain modifications of the "ducks" before they could be operated on Lake Hamilton.

In 1982 L & L decided to challenge the Coast Guard's jurisdiction to regulate its business. L & L contended that it had operated for twenty years without incident under state regulation and was not financially able to comply with the Coast Guard's regulations. On cross-motions for summary judgment, the district court ruled in favor of L & L and enjoined appellants from any further regulation or inspection of the "ducks." The district court based its jurisdiction on 28 U.S.C. § 1333 (admiralty and maritime jurisdiction). Relying on *Livingston v. United States*, 627 F.2d 165 (8th Cir.1980), *cert. denied*, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981), the district court held that the Coast Guard

---

1. Elizabeth Dole became Secretary of the Department of Transportation after this litigation began.

2. 46 U.S.C. § 390a provided for the triennial inspection of passenger-carrying vessels and set forth the criteria for those inspections. Section 390(b) defined "passenger-carrying vessel" and stated that the term included "any domestic vessel operating on the navigable waters of the United States." These provisions were repealed by the Act of Aug. 26, 1983, Pub.L. 98–89, § 4(b), 97 Stat. 599, 604, 605. Section 4(b) of the Act provides that the repeal is effective "except for ... proceedings that were begun, before the date of enactment of this Act and except as provided by section 2 of this Act." 46 U.S.C.A. App. § 4(b) (West Supp.1983). Section 2(d) of the Act states that "[a]n action taken or an offense committed under a law replaced by this Act is deemed to have been taken or committed under the corresponding provision of this Act." *Id.* § 2(d). 46 U.S.C. § 390a corresponds to 46 U.S.C.A. §§ 3301(8) (small passenger vessel), 3305 (West Supp.1983). 46 U.S.C. § 390(b), defining a passenger-carrying vessel, corresponds to 46 U.S.C.A. § 2101(21)(B) (passenger on a small passenger vessel), (35) (small passenger vessel) (West Supp.1983).

lacked admiralty jurisdiction to regulate any vehicles operating on Lake Hamilton because Lake Hamilton was not "presently navigable in fact." *Land & Lake Tours, Inc. v. Lewis,* No. 82–6014 (W.D.Ark. Apr. 4, 1983). This appeal followed.

■ Appellants concede on appeal that no federal admiralty jurisdiction exists with respect to Lake Hamilton. Appellants argue, however, that Lake Hamilton is a navigable water of the United States for commerce clause purposes, and Congress' authority to require inspection of L & L's vehicles is premised on the commerce clause, U.S. Const. art. I, § 8, cl. 3, and does not involve the admiralty jurisdiction clause, U.S. Const. art. III, § 2, cl. 1.[3]

In *Kaiser Aetna v. United States,* 444 U.S. 164, 174, 100 S.Ct. 383, 389–90, 62 L.Ed.2d 332 (1979) (emphasis added), the Supreme Court stated:

> [United States v.] Appalachian Power Co., [311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940),] indicates that *congressional authority over the waters of this Nation does not depend on a stream's "navigability."* And, as demonstrated by this Court's decisions in *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1 [57 S.Ct. 615, 81 L.Ed. 893] (1937), *United States v. Darby,* 312 U.S. 100 [61 S.Ct. 451, 85 L.Ed. 609] (1941), and *Wickard v. Filburn,* 317 U.S. 111 [63 S.Ct. 82, 87 L.Ed. 122] (1942), a wide spectrum of economic activities "affect" interstate commerce and thus are susceptible of congressional regulation under the Commerce Clause *irrespective of whether navigation, or, indeed, water, is involved.* The cases that discuss Congress' paramount authority to regulate waters used in interstate commerce are consequently best understood when

viewed in terms of more traditional Commerce Clause analysis than by reference to whether the stream in fact is capable of supporting navigation or may be characterized as "navigable water of the United States."

The Court cautioned that because the concept of navigability has been used for several purposes (for example, to define the scope of Congress' regulatory authority under the commerce clause and to delimit the admiralty and maritime jurisdiction of federal courts under art. III, § 2 of the Constitution), "any reliance upon judicial precedent must be predicated upon careful appraisal of the *purpose* for which the concept of 'navigability' was invoked in a particular case." *Id.* at 171, 100 S.Ct. at 388 (quoting with approval from the district court opinion, 408 F.Supp. 42, 49 (D. Hawaii 1976) (emphasis in original)).

In the present case, the district court's reliance on *Livingston* was misplaced. *Livingston* involved a wrongful death action against the government based on the district court's admiralty jurisdiction as set forth in 28 U.S.C. § 1333. We held there that "the district court lacked admiralty jurisdiction because the accident occurred on waters that, though once used for commercial shipping, are no longer navigable in fact." 627 F.2d at 165. The case at bar did not involve the district court's article III admiralty jurisdiction, but instead Congress' article I power to regulate interstate commerce. As noted in *Kaiser Aetna v. United States,* 444 U.S. at 173–74, 100 S.Ct. at 389–90, Congress' article I power to regulate interstate commerce does not depend upon "navigability." Here, the federal government has an intense interest in the safety of passenger vessels, and the safety of passenger vessels has a substantial effect on interstate commerce.[4] Undoubtedly Congress may require the in-

---

3. Because present navigability in fact is the linchpin of admiralty jurisdiction, the district court's finding that Lake Hamilton was currently non-navigable arguably ousted the court of jurisdiction under 28 U.S.C. § 1333. We find, however, that the issues before the district court raised federal questions involving Congress' power under the commerce clause, and jurisdiction therefore obtained under 28 U.S.C. § 1331.

4. The original laws [governing the inspection and certification of vessels] were directly related to the safety of the relatively new and potentially dangerous steam vessel. The demand for Federal remedial legislation began during the early 1800's after frequent and disastrous explosions of steam boilers on passenger vessels. This directly led to the first maritime safety laws in 1838 that required

spection of passenger vessels, impose safety requirements, and "exercise its authority for such other reason as may seem to it in the interest of furthering navigation or commerce." *Id.* at 174, 100 S.Ct. at 390.

▮▮ Thus, the vessel safety specifications and periodic safety inspection requirements represent an exercise of Congressional power under the commerce clause, which has been delegated to the Coast Guard. Although characterization of Lake Hamilton as "navigable waters of the United States" is not necessary to support Congressional authority to regulate vessel safety under the commerce clause after *Kaiser Aetna v. United States, id.* at 173–74, 100 S.Ct. at 389–90, we note that the term "passenger-carrying vessel" is in part defined in 46 U.S.C. § 390(b) (now repealed) [5] to include "any vessel operating on the navigable waters of the United States." In *Adams v. Montana Power Co.,* 528 F.2d 437, 440 (9th Cir.1975) (citations omitted), a case decided before *Kaiser Aetna,* the court discussed the meaning of "navigable waters of the United States" in the context of commerce clause regulation:

> The commerce clause vests power in Congress to regulate all waters navigable in interstate or foreign commerce. In determining the scope of navigable waters for purposes of exercising the commerce power, the courts developed the doctrine that if a waterway was navigable in its natural and ordinary condition, it remained so despite subsequent obstruction.

*Cf. Livingston v. United States,* 627 F.2d 165, 169–70 (8th Cir.1980) (comparison of admiralty jurisdiction, which requires present navigability in fact for commercial shipping, with commerce clause jurisdiction, which requires historical navigability), *cert. denied,* 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981). Lake Hamilton is part of the navigable waters of the United States because the part of the Ouachita River which was obstructed by dams to create Lake Hamilton was navigable in its natural and ordinary condition. *See Madole v. Johnson,* 241 F.Supp. 379, 382 (W.D.La.1965) (specific finding that the Ouachita River in its natural and ordinary state is or was capable of being used as a highway for commerce); *see also Cooper v. United States,* 489 F.Supp. 200, 203 (W.D. Mo.) (similar lake created by dam on river and located within one state; vessels operating on lake subject to vessel safety inspection and certification by Coast Guard), *vacated on other grounds,* 500 F.Supp. 191 (1980). Thus, the ducks operated on Lake Hamilton by L & L are vessels operating on the navigable waters of the United States and as such are subject to the Coast Guard's vessel safety specifications and periodic safety inspections.

Accordingly, the order of the district court is reversed.

periodic inspection and certification of vessels engaged in the transportation of passengers and freight on the waters of the United States. This was followed by a more extensive steamboat inspection law in 1852....

In 1864 the principal inspection and licensing provisions of the 1852 Act were made applicable to ferries, towing vessels, and canal boats. However, steamboat explosions continued with high loss of life and property. One of the greatest of all disasters, the destruction of the passenger vessel *Sultana* by explosion and fire with a loss of life estimated at more than 1,500 lives in April 1865, led to renewed legislation efforts. In 1871 this culminated with legislation that combined a number of new requirements into a coherent and unified body of maritime safety laws....

In the more than 100 years since then, as the public recognized the need for vessel safety legislation, primarily as the result of maritime disasters, other classes of vessels [than steam vessels] were subjected to Federal inspection or regulatory control. These included ... all vessels carrying more than six passengers in 1956....

H.R.Rep. No. 338, 98th Cong., 1st Sess. 136–37, *reprinted in* 1983 U.S.Code Cong. & Ad.News 948–49.

5. The definition of "small passenger vessel" in the 1983 Act does not include a reference to the "navigable waters of the United States." 46 U.S. C.A. § 2101(21)(B), (35) (West Supp.1983).