689 F.Supp. 958 (1988)
In the Matter of the Complaint of THREE BUOYS HOUSEBOAT VACATIONS U.S.A., LTD., etc.
No. 88-141A-(1).
United States District Court, E.D. Missouri, E.D.
June 27, 1988.
*959 Joseph A. Murphy, Peter M. Maginot, Lucas & Murphy, St. Louis, Mo., James R. Sutterfield, James R. Holmes, Carmouche, Gray & Hoffman, New Orleans, La., for plaintiff.
James E. Hullverson, Stephen H. Ringkamp, Hullverson, Hullverson & Frank, Inc., Sandor Korein, Joseph L. Bauer, Jr., St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This matter is now before the Court on claimants' motions to dismiss plaintiffs complaint for lack of subject matter jurisdiction. Two jurisdictional questions are presented in this case: (1) whether Lake of the Ozarks, a reservoir formed by Bagnell Dam and located entirely within the State of Missouri, is a "navigable" body of water within the Court's federal admiralty jurisdiction; (2) whether an action pursuant to the Limitation of Liability Act is within the Court's federal question or commerce clause jurisdiction.

I. Background.

Plaintiff Three Buoys Houseboat Vacations U.S.A., Ltd. (Three Buoys) is a Missouri corporation engaged in the business of chartering houseboats on Lake of the Ozarks. Lake of the Ozarks is a body of water in central Missouri which was created by impounding the Osage River by construction of the Bagnell Dam, a dam with no locks to allow passage of vessels. This case arises from a collision between a twenty-foot fiberglass vessel operated by an employee of Three Buoys and the Kantafordit houseboat. The collision occurred at approximately 2:00 a.m. on August 2, 1987 on Lake of the Ozarks. As a result of the collision, two passengers on the houseboat were killed, three other passengers on the houseboat and plaintiff's employee sustained personal injuries, plaintiff's vessel sank and the houseboat sustained property damages. Several wrongful death, personal injury, and property damage claims have been filed in state court against Three Buoys and its vessel. (Plaintiff's Complaint, ¶ 10; Plaintiff's Affidavit of Mailing Notice filed March 1, 1988).
Three Buoys filed the present complaint for exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C.App. §§ 181 et seq., to limit its liability in connection with the collision that occurred on Lake of the Ozarks. Plaintiff's complaint alleges that the Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333, or in the alternative, has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337. Plaintiff posted security and requested an order restraining and enjoining the prosecution of all suits or legal proceedings against it and issuing notice to claimants directing them to file their claims in federal court. See 46 U.S.C.App. § 185. On January 26, 1988, this Court issued a restraining order enjoining suits and issued notice to all claimants directing the filing of claims. Claimants move to dismiss plaintiff's complaint on the ground that Lake of the Ozarks is not a "navigable" body of water within the admiralty jurisdiction of this Court.

II. Admiralty Jurisdiction.

The admiralty jurisdiction of the federal district court is set forth in 28 U.S.C. § 1333, which provides in pertinent part:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
Congress extended admiralty and maritime jurisdiction to cases arising from personal injury or property damage sustained on navigable waters in the Admiralty Jurisdiction Extension Act, which provides in pertinent part:
The admiralty and maritime jurisdiction of the United States shall extend to and *960 include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.
46 U.S.C.App. § 740.
Under the Limitation of Liability Act, a ship owner's liability for personal injury or property damage is limited to the value of the vessel and its pending freight when the loss is incurred without the owner's privity or knowledge. 46 U.S.C.App. § 183(a);[1]Valley Line Co. v. Ryan, 771 F.2d 366, 369 (8th Cir.1985). This limitation of liability extends to "all seagoing vessels" and to "all vessels used on lakes or rivers or inland navigation." 46 U.S.C. App. § 188.[2] The Limitation of Liability Act was enacted to encourage investments in shipbuilding and to provide an opportunity for the complete disposition of claims against a vessel and its owner. Just v. Chambers, 312 U.S. 383, 385-386, 61 S.Ct. 687, 690, 85 L.Ed. 903 (1941).
The determination of whether admiralty jurisdiction exists over a maritime tort involves a two-fold inquiry. First, the tort must occur on "navigable" waters. Second, the tort must have a "sufficient nexus" to a traditional maritime activity. Foremost Insurance Co. v. Richardson, 457 U.S. 668, 671-674, 102 S.Ct. 2654, 2656-58, 73 L.Ed.2d 300 (1982); Complaint of Paradise Holdings, 619 F.Supp. 21, 22-23 (C.D.Cal.1984), aff'd, 795 F.2d 756 (9th Cir.), cert. denied, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 705 (1986).
The Eighth Circuit has held that "navigability", for purposes of admiralty jurisdiction is "properly limited" to waters which have "a present capability ... to sustain commercial shipping." Livingston v. United States, 627 F.2d 165, 170 (8th Cir.1980), cert. denied, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981). See also Land and Lake Tours, Inc. v. Lewis, 738 F.2d 961, 963 n. 3 (8th Cir.), cert. denied, 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984) ("present navigability in fact is the linchpin of admiralty jurisdiction"); Edwards v. Hurtel, 717 F.2d 1204, 1205 (8th Cir.1983) (admiralty jurisdiction "turns on contemporary navigability in fact"). In Livingston, the Eighth Circuit held that no admiralty jurisdiction existed over an action arising from a death on the Norfolk River which occurred after construction of a hydro-electric dam had closed the river to commercial activity. The court found that a history of commercial activity on the Norfolk River was not determinative of admiralty jurisdiction and that the closing of the river to commercial traffic eliminated admiralty jurisdiction over the river. Id. at 169-170. The court explained that "absent some present or potential commercial activity, there is no ascertainable federal interest that justifies frustrating the legitimate interests of the states in providing a forum and applying their law to regulate conduct within their borders." Id. at 170. (citing Adams v. Montana Power Co., 528 F.2d 437, 439 (9th Cir.1975)).
In Cooper v. United States, 500 F.Supp. 191 (W.D.Mo.1980), the United States District Court for the Western District of Missouri applied the Livingston decision to an action arising from the death of an individual which occurred as a result of a collision of two motorboats on Lake of the Ozarks. The court held that Lake of the Ozarks was not within the Court's admiralty jurisdiction. Cooper, 500 F.Supp. at 193.[3]
*961 Plaintiff argues that Lake of the Ozarks is a "navigable" body of water within the admiralty jurisdiction of this Court. Plaintiff points out that at the time that Lake of the Ozarks was constructed by the Bagnell Dam, the Osage River was a navigable stream. Plaintiff relies upon In re Wood's Petition, 145 F.Supp. 848 (W.D.Mo.1956), aff'd sub nom. Loc-wood Boat and Motors v. Rockwell, 245 F.2d 306 (8th Cir.1957). In Wood's Petition, the district court held, based upon the historical navigability of the Osage River, that Lake of the Ozarks was a "navigable" body of water within the admiralty jurisdiction of the court. The decision was affirmed on appeal.
Plaintiff's reliance upon the historical navigability of the Osage River and the Loc-wood Boat and Motors decision is unavailing. In Livingston, the Eighth Circuit specifically rejected reliance upon historical navigability as a basis for establishing present admiralty jurisdiction. Livingston, 627 F.2d at 170. The Livingston court pointed out that in the Loc-wood Boat and Motors decision the parties did not challenge the appropriateness of admiralty jurisdiction and the court was not "squarely faced with the question of whether current navigability in fact is required for admiralty jurisdiction." Livingston, 627 F.2d at 168 and n. 4. Finally, the Livingston court unequivocally stated that "[n]otwithstanding any expressions to the contrary in prior decisions of this court, federal admiralty jurisdiction turns on contemporary navigability in fact," not historical navigability. Id. at 170.
Plaintiff relies upon several regulatory and administrative determinations of navigability to support its contention that Lake of the Ozarks is a "navigable" body of water within the admiralty jurisdiction of this Court. First, plaintiff relies upon an April 9, 1981 order of the Federal Energy Regulatory Commission (FERC) issuing a license to Union Electric for the operation of the Osage project, which states that the project, Bagnell Dam, is located on the Osage River, "a navigable water of the United States." (See Plaintiff's Reply Memorandum, Exhibit A). Under the Federal Power Act, the FERC has authority to issue licenses for the construction of dams and other works. See 42 U.S.C. § 7172. Plaintiff also argues that Congress' declaration that a portion of the Osage River, at a point well upstream from Lake of the Ozarks, is not navigable, see 33 U.S.C. § 41, means that the portion of the Osage River containing Lake of the Ozarks is navigable. Plaintiff contends that the continued issuance of permits by the Army Corps of Engineers for construction of obstructions on Lake of the Ozarks (see Plaintiff's Reply, Exhibit B), also demonstrates that Lake of the Ozarks is a "navigable" water of the United States within the meaning of 33 C.F.R. § 328.3 and 33 C.F.R. § 329.4.[4] Finally, plaintiff argues that the Coast Guard inspection of excursion vessels which carry passengers for hire on Lake of the Ozarks is further evidence of the navigability of Lake of the Ozarks.
Definitions of "navigability" for administrative or regulatory purposes are separate and distinct from judicial definitions of navigability for purposes of admiralty jurisdiction. See Reynolds v. Bradley, 644 F.Supp. 42, 45 (N.D.N.Y.1986); Wilder v. Placid Oil Co., 611 F.Supp. 841, 844 (W.D. La.1985). In Livingston, the Eighth Circuit cautioned that determinations of navigability must be viewed in light of the *962 purposes for which the determinations were made, and stated the following:
The Supreme Court has recently observed that precedent in this area must be evaluated carefully in light of "`the purpose for which the concept of "navigability" was involved in a particular case'." Kaiser Aetna v. United States, 444 U.S. 164, 171 [100 S.Ct. 383, 388, 62 L.Ed.2d 332 (1979)] ... The Court in that case identified four separate purposes underlying the definitions of "navigability": to delimit the boundaries of the navigational servitude; to define the scope of Congress' regulatory authority under the commerce clause; to determine the extent of the authority of the Corps of Engineers under the Rivers and Harbors Act of 1889; and to establish the limits of federal admiralty jurisdiction. Each of these areas of the law might well require a different definition of "navigability."
In Kaiser Aetna, the Court noted specifically that Congress' regulatory authority under the commerce clause is historically very broad, and the expansive definitions of navigability developed in commerce clause cases are not really appropriate in other contexts where the actual capability of a stream to support navigation is critical ... What is required in those contexts is a functional analysis of "navigability," so that the limits of governmental authority are determined in accordance with the purposes it serves.
Livingston, 627 F.2d 165, 169 (8th Cir.1980) (citations omitted).
The administrative and regulatory determinations relied upon by plaintiff define the scope of the Army Corps of Engineers' authority over certain bodies of water and the scope of Congress' regulatory authority under the commerce clause, not the scope of judicial authority to exercise admiralty jurisdiction. Under a "functional analysis", the Court finds that the plaintiff has failed to establish that Lake of the Ozarks is presently navigable. See Livingston, 627 F.2d at 169, 170. The lake is impounded by the Bagnell Dam, the dam has no locks to allow passage of boats from the Osage River into the lake, and the lake lies wholly within the State of Missouri. The Court concludes that Lake of the Ozarks is presently incapable of sustaining commercial shipping and is not "navigable" for purposes of admiralty jurisdiction, and thus, is not within the admiralty jurisdiction of this Court.[5]

III. Alternative Bases of Jurisdiction.

Plaintiff argues that even if no admiralty jurisdiction exists over the limitation proceedings, the Court has federal question or commerce clause jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331, 1337.
Plaintiff contends that the Limitation of Liability Act, an Act regulating commerce, provides its own basis for jurisdiction. Several courts have rejected the contention that the Limitation of Liability Act provides a basis for jurisdiction regardless of the navigability of the body of water involved. See Marroni v. Matey, 492 F.Supp. 340, 343 (E.D.Pa.1980); In re Builders Supply Co., 278 F.Supp. 254, 256-57 (N.D.Iowa 1968); In re Howser's Petition, 227 F.Supp. 81, 85-86 (W.D.N.C. 1964); In re Madsen's Petition, 187 F.Supp. 411, 413-14 (N.D.N.Y.1960). These courts emphasized that the scope of the Limited Liability Act was "co-extensive" with the scope of admiralty jurisdiction. However, none of these cases addressed the precise issue presented in the present case concerning whether an action pursuant to the Limitation of Liability Act arises under federal law or an Act of Congress regulating commerce and, thus, is within the Court's § 1331 or § 1337 jurisdiction.
The power of Congress to enact the Limitation of Liability Act is "derived both from the power to regulate commerce and from the clause in the Constitution extending *963 judicial power to `all cases of admiralty and maritime jurisdiction'." Old Dominion S.S. Co. v. Gilmore (The Hamilton), 207 U.S. 398, 404, 28 S.Ct. 133, 134, 52 L.Ed. 264 (1907); 3 Benedict on Admiralty § 3, p. 1-29 (7th Ed.1986). To base jurisdiction upon § 1337, the commerce clause need not be the exclusive source of federal power involved in the statute, it need only be a significant source. Murphy v. Colonial Federal Savings & Loan Ass'n, 388 F.2d 609, 615 (2d Cir.1967). See generally 13B Wright, Miller & Cooper, Federal Practice and Procedure § 3574 (1984). The courts have held that suits under the Merchant Marine Act of 1920 (Jones Act), 46 U.S.C. App. § 688, which was enacted pursuant to Congress' power to regulate commerce and power to make laws necessary and proper to carry out the Court's power over admiralty and maritime cases, arise under an Act regulating commerce and are within the court's section 1337 jurisdiction. See Ballard v. Moore-McCormick Lines, Inc., 285 F.Supp. 290, 295-96 (S.D.N.Y.1968); Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Authority, 274 F.Supp. 764, 767-69 (E.D.La.1967). The courts have likewise held that other shipping laws are within the § 1337 jurisdiction of the federal courts. See Maritime Service Corp. v. Sweet Brokerage De Puerto Rico, Inc., 537 F.2d 560 (1st Cir.1976) (Shipping and Intercoastal Shipping Acts); Crispin Co. v. Lykes Bros. Steamship Co., 134 F.Supp. 704 (S.D.Tex.1955) (Carriage of Goods by Sea Act); see also Land and Lake Tours, Inc. v. Lewis, 738 F.2d 961 (8th Cir.), cert. denied, 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984) (Section 1331 jurisdiction exists over Steamboat Inspection Act claim).
The existence of commerce clause or federal question jurisdiction does not turn upon the present navigability of a body of water. See Land and Lake Tours, Inc. v. Lewis, 738 F.2d 961 (8th Cir.), cert. denied, 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984). In Land and Lake Tours, Inc., the Eighth Circuit held that federal question jurisdiction existed over a lake which was not presently navigable in fact, but which was navigable in its "natural and ordinary condition." Id. at 964. Although Lake of the Ozarks is not currently navigable for purposes of admiralty jurisdiction, the portion of the Osage River containing the lake was navigable in its natural and ordinary condition before it was obstructed by the Bagnell Dam to form Lake of the Ozarks. Therefore, notwithstanding the lack of admiralty jurisdiction, this Court has jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1337, over this limitation proceeding which arises under an Act of Congress regulating commerce.
Having concluded that federal question jurisdiction exists over this limitation action, the Court must now determine whether the Limitation of Liability Act applies to the present case which involves a collision between vessels on non-navigable waters. Congress enacted the Limitation of Liability Act in 1851 to encourage investment in the American maritime industry. See Matter of Sisson, 668 F.Supp. 1196, 1198 (N.D. Ill.1987). The focus of the statute was entirely upon commercial shipping. See Complaint of Shaw, 668 F.Supp. 524, 526 (S.D.W.Va.1987). Congress recognized that many foreign countries involved in maritime commerce maintained laws limiting the tort liability of ship owners. Matter of Sisson, 668 F.Supp. at 1198. Without limited liability, the American merchant marine was at a competitive disadvantage in the maritime world market. The Limitation of Liability Act was designed to place American maritime trade on an "equal footing" with the competing European maritime industry which already enjoyed limited liability, not to protect commerce on inland lakes. In re Stephens, 341 F.Supp. 1404, 1405-06 (N.D.Ga.1965).
Plaintiff argues that the Limitation of Liability Act is not expressly limited, by its terms, to vessels on "navigable" waters, but is applicable to "all vessels" on "lakes or rivers or inland navigation." See 46 U.S.C.App. § 188. Section 188 was amended in 1886 to make the Limitation of Liability Act applicable to "all vessels used on lakes or rivers or inland navigation." 46 U.S.C.App. § 188; G. Gilmore & C. Black, Jr., The Law of Admiralty, 843-44 (2d Ed.1975). The earlier version of section *964 188 had excluded "owners of any canal boat, barger or lighter ... used in rivers or inland navigation" from the protection of the Act. Gilmore & Black at 843-44. The amendment was designed to make the Act applicable to all vessels regardless of the purposes for which they were used, see Petition of Liebler, 19 F.Supp. 829, 832 (W.D.N.Y.1937), not to extend the Act to vessels on non-navigable waters. Professors Gilmore and Black have observed that the Limitation of Liability Act only applies when the "structure seeking the benefit of the Limitation Act qualifies as a `vessel'" within the meaning of section 188 and "the event giving rise to the claims occurred on navigable waters within the Admiralty jurisdiction" of the court. Gilmore & Black at 843-44.
The Court concludes that application of the Limitation of Liability Act is properly limited to incidents occurring on waters which are "navigable" for purposes of admiralty jurisdiction and does not extend to a collision on non-navigable waters. Exercise of federal jurisdiction over this collision between two vessels on waters which lie wholly within the State of Missouri and which are closed to commercial shipping would not advance the purposes underlying the Limitation of Liability Act and would undermine the interests of the state in providing a forum for claims arising out of conduct occurring on its internal waterways. If application of the Limitation of Liability Act was not confined to "navigable" waters, then every boat owner on every inland lake with no connection with maritime commerce would be within the reach of the limitation statute. Congress did not intend this result. Therefore, to the extent that plaintiff seeks to invoke the Court's general federal question or commerce clause jurisdiction, plaintiff's complaint is dismissed for failure to state a claim under the Limitation of Liability Act. See Fed.R.Civ.P. 12(b)(6); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 593 (1969).

ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that the motions of claimants Harvey G. Morts and Karron Lee Webb, et al. to dismiss the complaint of Three Buoys Houseboat Vacations U.S.A., Ltd. be and are granted.
IT IS FURTHER ORDERED that, to the extent that plaintiff seeks to invoke the Court's admiralty jurisdiction, plaintiff's complaint be and is dismissed for lack of subject matter jurisdiction.
IT IS FURTHER ORDERED that, to the extent that plaintiff seeks to invoke the Court's general federal question or commerce clause jurisdiction, plaintiff's complaint be and is dismissed for failure to state a claim under the Limitation of Liability Act.
IT IS FURTHER ORDERED that the injunction order entered in this action on January 26, 1988 be and is dissolved and declared to be of no effect.
IT IS FURTHER ORDERED that plaintiff's motion for an order noting defaults be and is dismissed as moot.
NOTES
[1] 46 U.S.C.App. § 183(a) provides in pertinent part:

The liability of the owner of any vessel ... for any loss, damage, or injury by collision ... incurred, without the privity or knowledge of such owner ... shall not ... exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.
[2] The Limitation of Liability Act has been supplemented by Admiralty Rules which prescribe procedural requirements for limitation proceedings. See Rules A and F of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.
[3] In Cooper, plaintiffs apparently conceded that the Livingston decision rendered Lake of the Ozarks beyond the court's admiralty jurisdiction. However, the court also stated that it was "convinced that Lake of the Ozarks is not navigable for purposes of admiralty jurisdiction." Cooper, 500 F.Supp. at 193.
[4] These regulations define "waters of the United States" and "navigable waters" for purposes of defining the authority of the Army Corps of Engineers. Section 328.3 defines "waters of the United States" in pertinent part as follows:

(1) All waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide.
Section 329.4 defines "navigable waters" as follows:
Navigable waters of the United States are those waters that are subject to the ebb and flow of the tide and/or are presently used, or have been used in the past, or may be susceptible for use to transport interstate or foreign commerce. A determination of navigability, once made, applies laterally over the entire surface of the water body, and is not extinguished by later actions or events which impede or destroy navigable capacity.
[5] Because the Court has concluded that the accident did not occur on "navigable" waters, it is not necessary to reach the issue of whether the tort had a "sufficient nexus" to a traditional maritime activity. See Foremost Insurance Co., 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982).