In the Matter of the Complaint of Kenneth A. SHAW as the Owner of an Unnamed Chrysler Motor Vessel for Exoneration from or Limitation of Liability.

Civ. A. No. 2:86–0747.

United States District Court,
S.D. West Virginia,
Charleston Division.

Aug. 26, 1987.

John M. Slack, III and Robert L. Stewart, Jr., Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for plaintiff.

Wesley W. Metheney, Wilson, Frame & Metheney, Morgantown, W.Va., for the Kidders.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This admiralty action is brought pursuant to the provisions of the Limitation of Liability Act, 46 U.S.C. § 183, *et seq.* Section 183(a) of that Act provides as follows:

"The liability of the owner of any vessel, whether American or foreign, for an embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

The Plaintiff in this action, Kenneth A. Shaw, seeks to limit his liability, if any, to the value of his boat.

Shaw was the owner of a motor boat which was involved in an accident on the Ohio River in June of 1984. Shaw had apparently loaned the unnamed boat to Joseph H. Spano. Spano was operating the boat when it allegedly struck Sharee K. Kidder's water skiing tow rope—she was water skiing at the time—causing serious injury to her thumb. Shaw was not in the boat at the time of the accident.

The Kidders, Sharee and her husband Mark, filed suit against Shaw and Spano in the Circuit Court of Kanawha County on February 12, 1986. Shortly thereafter the action was removed to this Court by Shaw and Spano who asserted that the maritime nature of the accident gave rise to federal question jurisdiction. The Kidders moved to remand the action to state court. Basing its decision in part on the Plaintiff's choice of forum under the savings-to-suitors clause, 28 U.S.C. § 1333(1), this Court remanded the action to state court on April 2, 1986. On July 3, 1986, however, Shaw filed his complaint for exoneration from or limitation of liability. Nearly contemporaneous with the filing of that complaint, the Court entered an injunction enjoining further prosecution of claims in other courts which arose from this incident. The injunction, a normal procedure in limitation actions, stayed the remanded state court pro-

ceeding. The Kidders have moved the Court to modify the injunction to allow them to prosecute the state court action.

■ The Kidders initially argued that the type of incident involved here, a water skiing accident, was not within this Court's admiralty jurisdiction. The Supreme Court's decision in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), makes abundantly clear, however, that accidents such as this one are within the scope of federal admiralty jurisdiction. *See also Hogan v. Overman*, 767 F.2d 1093 (4th Cir.1985) (water skiing accidents within admiralty jurisdiction of district court if navigational error of vessel involved). Notwithstanding the propriety of federal jurisdiction, this Court remanded the earlier action to state court at the behest of the Kidders. They had chosen as their forum the Circuit Court of Kanawha County. This was their right under the savings-to-suitors clause. *Means v. G & C Towing, Inc.*, 623 F.Supp. 1244 (S.D.W.Va.1986). The pivotal issue now before the Court is whether Shaw, as the owner of a pleasure craft, may now avail himself of the Limitation of Liability Act.

■ There is much confusion in the courts today on the question framed above. The Supreme Court has never squarely addressed it. In *Coryell v. Phipps (The Seminole)*, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943) and *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941), the Supreme Court had before it limitation of liability actions involving pleasure craft. The issue in both cases, however, was whether there was privity or knowledge on the part of the vessel owner sufficient to defeat limitation. It has been speculated that the Supreme Court may have "merely assumed" that the limitation law applied to pleasure craft. *Baldassano v. Larson*, 580 F.Supp. 415 (D.Minn.1984). In any event, the issue has not been explicitly presented to the high court.

The Fourth Circuit did address the issue in *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745 (4th Cir.1975). Therein the Court found that the limitation statute did apply to pleasure craft. Nevertheless, the Court expressed serious reservations about its ruling.

"Surely, the limitation of liability to the value of the boat of an owner without 'privity or knowledge' of the fault in the context of a small pleasure craft capable of causing death or grievous injury is in conflict with our senses of justice and appropriateness. It may have been necessary to provide an owner of a commercial vessel with the right to limit his liability to the after event value of the vessel; American shipping was in competition with English shipping where there was such a right, and members of the industry may have been thought in need of protection from exposure to all of the economic consequences of major disasters. But we can perceive no reason to extend that protection to the relatively affluent owners of pleasure boats and their insurers at the expense of those injured or killed and their families."

*Id.* at 748. In the same year that *Richards* was decided, the Fifth Circuit also expressed its displeasure with the liberal interpretation of the limitation law: "[W]e acknowledge that contemporary thought, see e.g. *Petition of Porter*, S.D. Tex., 1967, 272 F.Supp. 282 (1968) A.M.C. 2310; Gilmore & Black, *The Law of Admiralty*, 880–84 (2d Ed.1975), finds little reason for allowing private owners of pleasure craft to take advantage of the somewhat drastic—for the injured claimants—provisions of the Limitation Act." *Gibboney v. Wright*, 517 F.2d 1054, 1057 (5th Cir.1975).

At the time *Richards* and *Gibboney* were decided, no court had yet broken with the generally held, though often criticized, view that the limitation law applied to pleasure craft. Recently, however, a trilogy of district courts have opted for a more restricted reading of the limitation law. The reasoning employed in each of the cases is similar, and the Court finds it to be persuasive.

In *Baldassano v. Larson*, 580 F.Supp. 415 (D.Minn.1984), the district court acknowledged that its decision was "precedent-breaking." It also conceded that pleasure craft were included generally

within the admiralty jurisdiction of the district courts. The *Baldassano* court held, however, that "merely because ... pleasure boats ... are regarded as 'vessels' for the purpose of establishing general admiralty jurisdiction does not mean that they must qualify as such for every provision under admiralty law." *Id.* at 418. Finding application of the limitation law to be "grossly unfair," the court chose not to apply it. In his memorandum in opposition to the Kidders' motion to modify the injunction, Shaw characterizes the *Baldassano* decision as "a blatant attempt to judicially rewrite the limitation statute." Subsequent decisions by district courts in Massachusetts [1] and Michigan [2] support the contrary view that the *Baldassano* court was properly interpreting rather than unjustly rewriting the limitation statute. The court in *Lowing* found "the question at hand [to be] one of statutory construction and interpretation, and as such ... a duty for which the courts have primary responsibility." *Id.* at 526.

In exhaustively reviewing the legislative and judicial history of the 1851 Act, codified at 46 U.S.C. § 183, *et seq.*, the *Lowing* court concluded that "the historical extension of the Limitation Act to pleasure boats occurred without congressional approval and allows for unjust and unnecessary repercussions." *Id.* at 527–28. This Court agrees. The legislative history reveals that the limitation statute was never intended to apply to pleasure craft. This intent can be gleaned in part from the language of the statute itself. The statute speaks of the boat owner's right to limit his liability to his interest in the vessel "and her freight then pending." As the *Lowing* court observed, "one does not usually think of a pleasure boat, of any type, as having any pending 'freight.'" *Id.* at 523.

The purpose of the limitation statute was to aid the United States' fledgling merchant marine. The focus was entirely on commercial shipping. Nowhere in the legislative history was there any mention of pleasure boating. Both the *Lowing* and

*Tracey* courts have relied upon the following three illuminating excerpts of the debate on the proposed statute:

"Why not give to those who navigate the ocean as many inducements to do so as England has done? ... That is what this bill seeks to do, and it asks no more."

23 Cong. Globe 331–32, 31st Cong., 2d Sess. (Jan. 25, 1851) (Senator Hamlin of Maine, the sponsor of the bill).

"We are carriers side by side with that nation, in competition with them, and we cannot afford very well to give them any great advantage over us...."

*Id.* at 714 (remarks by Senator Davis of Massachusetts).

"[H]ow are we to continue our commercial interest on a firm foundation unless we put our ship owners on the same footing with those of other countries? Is there a more important matter than one like this, in which the interest of our whole commercial marine is at stake?"

*Id.* (remarks of Senator Cass of Michigan). These quotes from the architects of the statute in question emphasize that the application of the limitation statute to pleasure boating is a perversion which runs beyond the intent of the statutory draftsmen. This Court joins with the other courts recently confronting this issue in refusing to perpetuate this unjust extension of the law.

In summary, the Court notes that it is aware of its duty to remain faithful to the holdings of the Court of Appeals for the Fourth Judicial Circuit. The Fourth Circuit's ruling in *Richards, supra*, is contrary to the Court's holding today. Nevertheless, the Court is convinced that the appellate court, were it given the opportunity, would recognize the recent trend of the law and would abandon that precedent in favor of the alternative.

Accordingly, the injunction order entered in this action on July 8, 1986, is hereby ORDERED dissolved and declared to be of no effect. The Court will dismiss this action without prejudice for lack of subject matter jurisdiction.

---

1. *Complaint of Tracey,* 608 F.Supp. 263 (D.Mass. 1985).

2. *Matter of Lowing,* 635 F.Supp. 520 (W.D.Mich. 1986).

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.