921 F.2d 775
 1991 A.M.C. 1356, 59 USLW 2416
 In the Matter of the Complaint of THREE BUOYS HOUSEBOAT
VACATIONS U.S.A. LTD., as owners of one 1977 Chriscraft 20'
fiberglass vessel, Vessel No. MO-3136-AT, for exoneration
from or limitation of liability, Appellant,
v.
Harvey G. MORTS, Appellee.
 No. 88-2436.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1989.
Decided Dec. 21, 1990.
 
 Joseph Murphy, St. Louis, Mo., for appellant.
 John C. Torjesen, St. Louis, Mo., for appellee.
 Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 After our original opinion in this case, Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts, 878 F.2d 1096 (8th Cir.1989), was decided, the Appellant applied for certiorari. The Supreme Court granted certiorari, vacated the opinion, and remanded the case for our reconsideration in view of Sisson v. Ruby, --- U.S. ----, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). Three Buoys Houseboat Vacations U.S.A., Ltd. v. Morts, --- U.S. ----, 110 S.Ct. 3265, 111 L.Ed.2d 775 (1990).
 
 
 2
 We have examined Sisson and its Seventh Circuit antecedent, In re Complaint of Sisson, 867 F.2d 341 (7th Cir.1989), and reexamined this case. We find no reason to alter our earlier judgment, except to the extent that it can be said to have relied on the Seventh Circuit's opinion in Sisson, which has been reversed.
 
 I. BACKGROUND
 
 3
 Three Buoys (the Appellant) is in the business of chartering houseboats on the Lake of the Ozarks in Missouri. In the early morning hours of August 2, 1987, a service vessel of Appellant's was sent out on a service call to one of its chartered houseboats. En route, the service boat struck a houseboat that was not chartered from Appellant. Two passengers on the stricken houseboat were killed, three others incurred personal injuries, as did one of Appellant's employees. The Appellant's service vessel sank.
 
 
 4
 Various claims for wrongful death, personal injury, and property damage were filed against the Appellant and its sunken vessel in the state courts of Missouri. Seeking to avoid full liability, Appellant petitioned the district court[1] for the protections of the Limitation of Liability Act, 46 U.S.C.App. Secs. 181 et seq. (the Act).[2] The Act would allow recovery against the Appellant only in the amount of the salvage value of Appellant's vessel (likely nothing, as it lies at the bottom of the Lake of the Ozarks) or $420 per ton. 46 U.S.C.App. Sec. 183(b) (1988).
 
 
 5
 The district court concluded that it lacked admiralty jurisdiction, but found that it had jurisdiction under general federal question jurisdiction. However, it ultimately dismissed Appellant's petition for failure to state a claim. The district court found that the Act could only support claims arising from navigable waterways and that the Lake of the Ozarks was not navigable. Thus, the Appellant had not stated a claim. We affirm the district court, but find no subject matter jurisdiction. We again conclude that neither this court nor the district court had jurisdiction under admiralty jurisdiction, federal question jurisdiction, or the Act to entertain this suit.
 
 II. DISCUSSION
 A. SISSON 'S IMPACT
 
 6
 Admiralty jurisdiction as to torts requires locality (the situs of the waterway) and nexus (the status of the vessel or activities). Locality is satisfied by a navigable waterway, while nexus is satisfied by a sufficient relationship of the vessel to maritime activities. See Sisson, 110 S.Ct. at 2895. While this case and Sisson both concern admiralty jurisdiction in the federal courts, each addresses a different aspect of that jurisdiction. Most importantly, they involve two very different waterways: Sisson involved Lake Michigan, indisputably a navigable waterway; this case involves the Lake of the Ozarks in Missouri, which we view as not a navigable waterway.
 
 
 7
 Further, while Sisson delineates admiralty's nexus requirement by explaining the meaning of maritime activities on navigable waterways, it says nothing about what actually constitutes a navigable waterway. That Lake Michigan is a navigable waterway is beyond doubt and was not discussed by the Court. The Lake of the Ozarks, however, is another cup of tea. This case turns only on the question of whether that lake is a navigable waterway for admiralty jurisdiction purposes.
 
 
 8
 In that regard, the Appellant has urged upon us the Supreme Court's language from Sisson to the effect that navigation is not required to establish a connection to maritime activities--indeed, the vessel in Sisson was docked at a marina on Lake Michigan, and was not navigating. Nevertheless, the court found that the mooring of a ship on a navigable waterway was sufficiently related to maritime activities to trigger admiralty jurisdiction. Sisson, 110 S.Ct. at 2897-98. Thus, the nexus requirement has become rather easily satisfied, and rightly so. It is the navigable waterway question (something of a given with respect to Lake Michigan) that seems more controlling and perhaps the one true determinant of admiralty jurisdiction. See Sisson, 110 S.Ct. at 2898-02 (Scalia, J., concurring).
 
 
 9
 Yet, the Appellant has ignored the distinction between navigation vis-a-vis the vessel and vis-a-vis the waterway. The whole significance of a waterway as navigable as a precondition to maritime jurisdiction seems lost to the Appellant. In Sisson, the Supreme Court said that navigation was not an essential element of the activities of the vessel to tie into maritime activities, but navigation as to the waterway was not discussed at all. While a vessel may not have to be navigating to be considered engaged in maritime activity, it must be on a navigable waterway. As Justice Scalia suggests, it is the very fact that a vessel is on a navigable waterway at all that creates maritime jurisdiction, and less so the activity of the vessel. Id. at 2901. Answering the question of the vessel's relationship to maritime activities does not answer the question of the waterway's status as navigable.
 
 
 10
 The two ideas are distinct--there is the waterway and there is the vessel and its activities. While the Appellant has suggested we deny this distinction and use the Supreme Court's analysis of navigation in the nexus-vessel context in our analysis of what is a navigable waterway, we cannot do so. The importance of the existence of a navigable waterway in the first instance is repeatedly brought home by the Supreme Court's recurrent use of the phrase "navigable waterway" to describe admiralty jurisdiction throughout its opinion in Sisson.[3] Hence, we remain confident that our inquiry must first determine if the Lake of the Ozarks is a navigable waterway. Because the Supreme Court has not discussed that factor in Sisson, we readopt our views as expressed in the original panel opinion and briefly reiterate them below.
 
 B. NAVIGABILITY
 
 11
 Navigability is a term subject to different definitions depending upon the context of a case. In some cases the term has a different meaning from that expressed in admiralty cases. See Kaiser Aetna v. United States, 444 U.S. 164, 170-72 and n. 7, 100 S.Ct. 383, 387-89 and n. 7, 62 L.Ed.2d 332 (1979); Livingston v. United States, 627 F.2d 165, 169-70 (8th Cir.1980), cert. denied, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981); cf. Minnehaha Creek Watershed Dist. v. Hoffman, 597 F.2d 617, 621-23 (8th Cir.1979) (defining navigable waters for purposes of certain acts of Congress). While there is ample case law describing navigability in contexts which do not concern admiralty, we are concerned with navigability only as it relates to admiralty. Livingston is the most complete statement from this court in that regard.
 
 
 12
 Thus, despite the criticisms expressed in Finneseth v. Carter, 712 F.2d 1041, 1045 (6th Cir.1983)[4], and until Supreme Court authority to the contrary, Livingston remains the controlling authority in this court for the determination of what is a navigable waterway. The standard is one of "contemporary navigability in fact." Livingston, 627 F.2d at 170; see also Edwards v. Hurtel, 717 F.2d 1204, 1205 (8th Cir.1983) (per curiam), opinion on rhr'g, 724 F.2d 689 (1984) (per curiam); cf. Goodman v. 1973 26 Foot Trojan Vessel, 859 F.2d 71, 73 and n. 3 (8th Cir.1988) (in admiralty contract case as distinguished from admiralty tort cases, court said "[n]avigable waters have a present capacity to sustain commercial shipping.") (citing Livingston, 627 F.2d at 170).
 
 
 13
 The Appellant suggests there is contrary authority from this court in Loc-Wood Boat & Motors v. Rockwell, 245 F.2d 306 (8th Cir.1957) and George v. Beavark, Inc., 402 F.2d 977 (8th Cir.1968). We do not entirely agree. Neither case directly addressed the admiralty jurisdiction question answered in Livingston. Livingston, 627 F.2d at 168 and n. 4. Thus, Appellant's reliance on those cases, particularly Loc-Wood, cannot help answer the question of what navigability is, which question controls this case.
 
 
 14
 George contains language to the effect that if a river was navigable prior to the construction of a dam, it is thereafter still considered to be a navigable waterway. George, 402 F.2d at 978. That language, however, is dictum and did not control on the real question necessary for resolution of the case: whether float fishing on the stream in question constituted commerce as to make the stream navigable. Id. To the contrary, the George court actually used the navigability in fact test to reach its conclusion that float fishing alone did "not render the stream navigable in fact[.]" Id. at 981. Further, George pointed out that the navigability in fact standard is an old one, dating back to The Daniel Ball, 77 U.S. (10 Wallace) 557, 19 L.Ed. 999 (1870).
 
 
 15
 'The test of navigability has frequently been stated by this Court. In The Daniel Ball ... the Court said: "Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." '
 
 
 16
 George, 402 F.2d at 980 (quoting United States v. State of Utah, 283 U.S. 64, 76, 51 S.Ct. 438, 441, 75 L.Ed. 844 (1931) (quoting The Daniel Ball, 77 U.S. (10 Wallace) at 563)). Thus, George and Livingston are not inconsistent. The latter is in some sense simply a more recent statement of the law expounded upon in the former. But Loc-Wood is a more troublesome case.
 
 
 17
 Loc-Wood makes the unequivocal statement that the Lake of the Ozarks is a navigable waterway. Loc-Wood, 245 F.2d at 307. However, Loc-Wood did not directly decide the question of what is navigable and what is not and only summarily addressed the issue. The precedents on which it relies say only that navigable waterways are within the admiralty jurisdiction of the federal courts, but say nothing of what is navigable and what is not. See Southern S.S. Co. v. NLRB, 316 U.S. 31, 41, 62 S.Ct. 886, 891, 86 L.Ed. 1246 (1942); The Propeller Genesee Chief v. Fitzhugh, 53 U.S. (12 How.) 443, 456-57, 13 L.Ed. 1058 (1851). Nevertheless, the clear statement that the Lake of the Ozarks is navigable remains an obstacle to the decisionmaking necessary to this case. And while George and Livingston could apply the correct standard of navigability without facing that language because those cases dealt with other waterways, we cannot apply the correct standard without squarely facing down Loc-Wood's conclusion as to the Lake of the Ozarks.
 
 
 18
 This court is back on the same body of water, but now rides the waves of intervening precedent. To the extent that Loc-Wood is in conflict with Livingston, we are faced with a choice of precedent. We follow Livingston as the better reasoned authority. Loc-Wood did not discuss the relevant (or any) legal standards on navigability later discussed by this court in George and Livingston. Our conclusion, with the advantage of hindsight and Livingston's authority, is that Loc-Wood was wrongly decided. To the extent that it is inconsistent with Livingston, is precedent for the proposition that the Lake of the Ozarks is a navigable waterway, and for the reasons discussed below, Loc-Wood is expressly overruled.[5]
 
 
 19
 Thus, we are faced with deciding whether the Lake of the Ozarks is a navigable waterway under Livingston's navigable in fact standard. We conclude that it is not for two related reasons. First, the Lake of the Ozarks is not navigable in fact because of the existence of the Bagnell Dam. Neither the possibility of future navigation in the event the Army Corps of Engineers removes the dam nor the prior alleged navigability of the Osage River before the existence of the dam alters the present facts. The lake cannot be negotiated past the dam. Present navigability is the standard, and present navigability, as we construe it for admiralty and like purposes, is not possible on the Lake of the Ozarks. Second, we conclude that the purely intrastate shipping which can be maintained on the lake, which is located entirely in the State of Missouri, is insufficient to make it a navigable waterway for interstate commerce purposes to sustain admiralty jurisdiction in the federal courts.[6] No jurisdiction lies under 28 U.S.C. Sec. 1333 (admiralty, maritime, and prize cases).
 
 
 20
 Likewise, we conclude that the Act does not create independent jurisdiction in the federal courts by "arising under" federal law under either 28 U.S.C. Sec. 1331 (federal question) or Sec. 1337 (commerce, et al.) (1988). Federal question jurisdiction is not created by the existence of the Act. The Act is really in the nature of a defense, it did not create Appellees' causes of action for personal injury and wrongful death against Appellant. The laws of Missouri are the source of those causes of action; while here the Appellant is attempting to misuse the Act to defeat what could be liability coupled with substantial damages, without the redeeming feature of encouraging maritime commerce on the high seas and navigable waterways. No independent federal question jurisdiction lies because of the Act. Further, the failure of navigability on the Lake of the Ozarks for purposes of maritime law submarines the theory of the Appellant's that the Act can create independent federal question jurisdiction for the reasons discussed below.
 
 
 21
 Finally, the Act's reach is only coextensive with that of admiralty jurisdiction. Where admiralty jurisdiction fails for want of a navigable waterway, so does the reach of the Act. Thus, even if the Appellant discovered an independent basis for subject matter jurisdiction, it still would not be afforded the protection of the Act because the Act does not apply beyond navigable waterways. While the Act was amended to include vessels on inland lakes and streams, the clear intent was to include only those in navigation. See 46 U.S.C.App. Sec. 188 (1988). The Lake of the Ozarks is not a navigable waterway for purposes of admiralty jurisdiction and thus is not navigable for purposes of the Act.
 
 
 22
 Our conclusions, now as before, are wholly consistent with the purposes of maritime jurisdiction. Maritime jurisdiction is designed to protect and promote maritime commerce by the application of uniform rules on navigable waterways. See Sisson, 110 S.Ct. at 2898. In the absence of a navigable waterway, there is obviously no need or authority to exercise admiralty jurisdiction or any other federal jurisdiction to give the Act reach beyond its maritime underpinnings.[7]
 
 III. CONCLUSION
 
 23
 Because the Lake of the Ozarks is not a navigable waterway, the facts of this case do not allow for federal jurisdiction under admiralty, federal question, or the Limitation of Liability Act. For all the foregoing reasons, we hold that the Appellant's complaint should be dismissed for want of jurisdiction, and it is so ordered.
 
 
 
 [1]
 The Honorable John F. Nangle, Chief United States District Judge for the Eastern District of Missouri. The published opinions of the district court are at 689 F.Supp. 958 (E.D.Mo.1988) and 691 F.Supp. 182 (E.D.Mo.1988). Judge Nangle has since assumed senior status
 
 
 [2]
 For a discussion of the traditional scope and purpose of the Act see Universal Towing Co. v. Barrale, 595 F.2d 414, 417-18 (8th Cir.1979)
 
 
 [3]
 As noted in Sisson, "[t]he fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce,' [Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982) ], and we have said that that interest cannot be fully vindicated unless 'all operators of vessels on navigable waters are subject to uniform rules of conduct,' id., at 675, 102 S.Ct., at 2658." Sisson, 110 S.Ct. at 2898
 
 
 [4]
 Finneseth is not actually contrary to Livingston, for Finneseth deals with a manmade lake formed by a lockless dam, but the "Dale Hollow Lake is an interstate water body susceptible or capable of being used as an interstate highway of commerce, even though it is not presently so used, it meets the Supreme Court's requirements for navigability for admiralty jurisdiction under 28 U.S.C. Sec. 1331(1) and 46 U.S.C. Sec. 740." Finneseth, 712 F.2d at 1047
 
 
 [5]
 As a matter of court procedure, a panel cannot overrule a prior panel opinion of this court. For that reason, this opinion has been circulated to the court en banc, and the court en banc has approved it
 
 
 [6]
 As to commerce, we reiterate what was first said in George
 We have mentioned the trend toward liberality in the treatment of admiralty jurisdiction but we are wary of the unnecessary extension of any rule on navigability, particularly when it could well lead to absurdity. There are many fishing streams [and recreational lakes] throughout the country which are not usable as highways for commerce or transportation in the customary mode.
 George, 402 F.2d at 981 (emphasis added).
 
 
 [7]
 In fact, the application of maritime law on the Lake of the Ozarks would do nothing to promote certainty and uniformity of maritime law for those vessel operators who are elsewhere engaged in maritime commerce. To the contrary, it would no doubt come as quite a surprise to the many recreational boaters on the lake that they are part of maritime commerce subject to admiralty jurisdiction on a non-navigable body of water. See note 6
 We, of course, do not suggest that the character of the vessel is determinative. In Sisson, the vessel was a pleasure yacht. See also Matter of Guglielmo, 897 F.2d 58 (2nd Cir.1990) (21-foot motorboat towing waterskier in bay off Long Island shore within Limitation of Liability Act); Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225 (11th Cir.1990) (jet ski in waterway off Key West, Florida, within Limitation of Liability Act); St. Hilaire Moye v. Henderson, 496 F.2d 973, 979 (8th Cir.), cert. denied, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974) (admiralty law does not apply only to vessels in commerce). It is the character of the waterway that first must be decided. If the waterway in question is not navigable for admiralty purposes, it makes little difference what craft sets sail.