Gary MOELLER and Dan Hall, Petitioners,

v.

Mark MULVEY, Ballard's Resort, Inc., The Heirs and Next-of-Kin of George Coe, Stanley Krueger, Randall W. Audette, and all others having claims, Respondents.

The HEIRS and Next-of-Kin OF George COE, and Stanley Krueger, Cross–Claimants,

v.

Mark MULVEY and Ballard's Resort, Inc., Cross–Defendants.

Civil No. 6–95–100.

United States District Court,
D. Minnesota,
Sixth Division.

Nov. 27, 1996.

Christopher D. Robinson, Askegaard & Robinson, Brainerd, MN, for Gary Moeller, Dan Hall.

David Edward Fitzgerald, Fitzgerald Law Office, Duluth, MN, for Mark Mulvey.

Thomas Raymond Thibodeau, Johnson Killen Thibodeau & Seiler, Duluth, MN, for Ballard's Resort Inc.

Gregory J. Griffiths, Dunlap & Seeger, Rochester, MN, Joseph V. Ferguson, III, Clure Eaton Butler Michelson Ferguson & Person, Duluth, MN, for George Coe Heirs and Stanley Krueger.

Timothy Harrison Dodd, Dodd Law Office, Minneapolis, MN, Douglas Paul Radunz, Radunz Law Office, Minneapolis, MN, for Randall W. Audette.

## ORDER

KYLE, District Judge.

Before the Court is Defendant Ballard Resort, Inc.'s Request for Reconsideration of the Report and Recommendation ("R & R")

of Magistrate Judge Raymond L. Erickson, dated October 28, 1996.

Construing the Request as Objections to the Report and Recommendation, the Court has conducted a *de novo* review of the entire R & R. Based upon this *de novo* review, and upon all of the files, records and proceedings herein, **IT IS ORDERED** that the Request for Reconsideration (Doc. No. 39) is **DENIED** and the Report and Recommendation (Doc. No. 36) is **ADOPTED.**

This matter is scheduled for trial before the Court, without a jury, in *Duluth,* Minnesota at 9:00 a.m. on December 16, 1996. It is referred to Magistrate Judge Erickson for the purpose of an expedited settlement conference at such time, location and under such conditions as Magistrate Judge Erickson shall direct.

## REPORT AND RECOMMENDATION

ERICKSON, United States Magistrate Judge.

At Duluth, in the District of Minnesota, this 28th day of October, 1996.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Petitioner Dan Hall's ("Hall's") Motion for Summary Judgment.

A Hearing on the Motion was conducted on September 3, 1996, in Fergus Falls, Minnesota, at which time the Petitioners Hall and Gary Moeller ("Moeller") appeared by Christopher D. Robinson, Esq.; the Respondent Mark Mulvey ("Mulvey") appeared by D. Edward Fitzgerald, Esq.; the Respondent Ballard's Resort, Inc. ("Ballard's Resort") appeared by Thomas R. Thibodeau, Esq.; the Respondent Heirs and Next-of-Kin of George Coe ("Coe Heirs"), and Stanley Krueger ("Krueger"), appeared by Gregory J. Griffiths, Esq.; and the Respondent Randall W. Audette ("Audette") appeared by Timothy H. Dodd, Esq.

For reasons which follow, we recommend that the Motion be granted.

## II. *Factual and Procedural History*

Hall and Moeller are the joint owners of a 1994 Lund Pro–V fishing boat. *Deposition of Dan Hall,* at 8. The purchase price of the craft was $12,500.00, and both men owned an equal interest in the boat—that is, a $6250.00 in the boat. *Id.* Hall and Moeller had reached no formal arrangement for apportioning their use of the boat but, instead, they made use of the craft on a "first-come, first-served" basis. *Affidavit of Dan Hall,* at ¶ 9. Moeller is an employee of Ballard's Resort, see, *Deposition of Gary Moeller,* at 8–9, and, on the morning of October 15, 1994, he guided two guests of the Resort—Krueger and George Coe ("Coe")—on a duck hunting venture, and undertook to transport them on the Lund Pro–V. *Id.,* at 25–26. While travelling on the Rainy River, which serves as an international border water, between the United States and Canada, see, *Affidavit of Dan* Hall, at ¶ 5, the Lund Pro–V collided with The Nunsea III, a watercraft that is owned by Mulvey. *Deposition of Gary Moeller,* at 32–33; *Pretrial Statement of Mark Mulvey.*

As a result of the collision, Coe was killed, and both Krueger and Audette—who was a passenger on The Nunsea III—were injured. *Concise Statement of the Case of The Heirs and Next–of–Kin of George Coe and Stanley Krueger,* at 2; *Concise Statement of the Case of Randall Audette,* at 1; *Pretrial Statement of Mark Mulvey.* Hall is not an employee of Ballard's Resort, and the Record is undisputed that he had no prior knowledge of, nor any involvement with, the hunting junket. *Affidavit of Dan Hall,* at ¶¶ 8–9; *Deposition of Gary Moeller,* at 51. According to Hall, prior to the accident on October 15, 1994, the Lund Pro–V was in good condition, and was properly equipped for operation on the waters in which the collision occurred. *Id.,* at ¶ 7.

Invoking this Court's admiralty and maritime jurisdiction, see, *Title 28 U.S.C. § 1333(1),* Hall and Moeller filed a Petition, on June 2, 1995, pursuant to Title 46 U.S.C.App. § 185, in which they sought an exoneration from, or a limitation on, their liability for the collision between the Lund Pro–V and The Nunsea III. In conjunction with their Petition, Hall and Moeller deposited, with the Clerk of Court, the sum of $15,000.00, which was the estimated value of the Lund Pro–V. Accordingly, on June 7, 1995, a Monition was issued, under the Seal of this Court, against all persons who were claiming damages for any and all loss, damage or injury that was caused by, or resulted from, the boat accident. By this Monition, the potential claimants were directed to appear before the Court, at or before 4:00 o'clock .p.m., on July 15, 1995, in order to submit proof of their claimed losses. Notice of the Monition was published in the *Baudette Region* and, in addition, on June 7, 1995, the Court issued a Temporary Restraining Order, which stayed and restrained the further prosecution of a State Court proceeding, which was filed by Audette against Hall, Moeller, and the others who were implicated in the collision, and which continues to pend in the Minnesota District Court for Lake of the Woods County. In responding to the Monition, the Respondents have duly filed their claims with the Court, and Krueger, and the Coe Heirs, have also filed crossclaims, sounding in negligence, against both Ballard's Resort and Mulvey.

In his Motion for Summary Judgment, Hall seeks a ruling which would limit his liability, for the accident between the Lund Pro–V and The Nunsea III, to $6,250.00, which is the value of his ownership interest in the Lund Pro–V. In opposing this Motion, the Respondents have argued that the Lund Pro–V is not a "vessel," as that term is defined in the applicable provisions of the admiralty and maritime law. See, *Title 46 U.S.C.App. § 183.*

### III. *Discussion*

#### A. *Hall's Motion for Summary Judgment.*[1]

The resolution of this Motion is governed by the terms of Title 46 U.S.C.App. § 183(a) which, as here pertinent, provides as follows:

---

1. We are mindful that Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence and in rendering credibility determinations. *Cel-*

The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandize shipped or put on board of such vessel, or for any loss, damage or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without any privity or knowledge of such owner or owners, shall not * * * exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

This Statute serves as but one aspect of the Limitation of Liability Act, see, *Title 46 U.S.C.App. §§ 181 et seq.*, which was originally enacted in 1851, see, *Norwich Co. v. Wright*, 80 U.S. (13 Wall.) 104, 20 L.Ed. 585 (1871), and which was intended to protect and foster the Nation's commercial shipping industry. As the Supreme Court has explained:

The great object of the law was to encourage ship-building and to induce capitalists to invest money in this branch of industry. Unless they can be induced to do so, the shipping interests of this country must flag and decline. Those who are willing to manage and work ships are generally unable to build and fit them. They have plenty of hardiness and personal daring and enterprise, but they have little capital. On the other hand, those who have capital, and invest it in ships, incur a very large risk in exposing their property to the interests of the sea, and to the management of seafaring men, without making them liable for additional losses and damages to an indefinite amount. How many enterprises in mining, manufacturing, and internal improvements would be utterly impracticable if capitalists were not encouraged to invest in them through corporate institutions by which they are exempt from personal liability, or from liability except to a limited extent? The public interests require the investment of capital in ship-building, quite as much as in any of these enterprises.

*Norwich Co. v. Wright*, supra at 121.

While, in the intervening years, Section 183 has been amended several times, with the most recent amendment having been enacted in 1984, the language of Section 183(a) remains largely the same as when it was originally promulgated.

■ In order to succeed in his Motion for Summary Judgment, Hall must satisfy three elements.[2] First, he must demonstrate that

---

*otex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the non-moving party, and we have found no triable issue, and the Plaintiff has not identified any genuine issue of material fact which would preclude the entry of Summary Judgment. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 471 (8th Cir.1995); *Barnard v. Jackson County, Missouri*, 43 F.3d 1218, 1223 (8th Cir.1995), cert. denied, — U.S. —, 116 S.Ct. 53, 133 L.Ed.2d 17 (1995). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Churchill Business Credit Inc., v. Pacific Mutual Door Co.*, 49 F.3d 1334, 1336 (8th Cir.1995); *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir.1994).

As Rule 56(e), Federal Rules of Civil Procedure, makes clear, once the moving party files a properly supported Motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e). Federal Rules of Civil Procedure; Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995); *State of Nebraska ex rel. Nelson v. Central Interstate Low-Level Radioactive Waste Commission*, 26 F.3d 77, 80 (8th Cir.1994), cert. denied, 513 U.S. 987, 115 S.Ct. 483, 130 L.Ed.2d 395 (1994).

2. In addition to these substantive elements, a Section 183 Petitioner must file his Petition within six months after first receiving a notice of claim from a potential claimant. *Title 46 U.S.C.App. § 185;* see also, *Rule F(1), Federal Rules of Civil Procedure. Supplemental Rules for Certain Admiralty and Maritime Claims.* Here, it is undisputed that Hall has satisfied this procedural requisite, as his action was commenced or. June 2, 1995, and Hall attests that he first received written notice of a claim, arising from the collision between The Nunsea III and the Lund Pro-V, on March 27, 1995. *Affidavit of Dan Hall*, at ¶ 10.

the collision between The Nunsea III and the Luzid Pro–V occurred on a "navigable waterway," over which this Court's general admiralty and maritime jurisdiction extends. See, *Three Buoys Houseboat Vacations U.S.A. v. Morts,* 921 F.2d 775, 778–79 (8th Cir.1990), cert. denied, 502 U.S. 898, 112 S.Ct. 272, 116 L.Ed.2d 224 (1991). Second, Hall must prove that the collision occurred without his "privity cr knowledge." *Title 46 U.S.C.App. § l83(a);* see also, *Baldassano v. Larsen,* 580 F.Supp. 415, 420 (D.Minn.1984). Finally, the Lund Pro–V must be a "vessel," as that term is employed within Section 133(a). *Id.*

The parties are in agreement that the accident of October 15, 1994, occurred on a "navigable waterway" and, upon our independent consideration of that issue, we concur. What constitutes a "navigable waterway," for purposes of admiralty and maritime jurisdiction, is determined by "contemporary navigability in fact." *Three Buoys Houseboat Vacations U.S.A. v. Morts,* supra at 778, citing *Livingston v. United States,* 627 F.2d 165, 169–70 (8th Cir.1980), cert. denied, 450 U.S. 914, 101 S.Ct. 1354, 67 L.Ed.2d 338 (1981). Under this standard, waterways are navigable "'when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.'" *Three Buoys Houseboat Vacations U.S.A. v. Morts,* supra at 778–79, quoting *George v. Beavark, Inc.,* 402 F.2d 977, 980 (8th Cir.1968). Here, as we have noted, the Rainy River is an international waterway, and it is frequently used for travel between the United States and Canada. *Affidavit of Dan Hall,* at ¶ 5. In addition, the Rainy River is used, by numerous area resorts and fishing guides, for the transport of customers and guests to the Lake of the Woods, which also serves as a international water boundary between the United States and Canada. *Id.,* at ¶¶ 4, 7. As well, a sea plane base is located on the River, approximately one mile from the sight of the collision. *Id.,* at ¶ 4. Under these circumstances, we conclude that the Rainy River is "navigable in fact" and, therefore, is a "navigable waterway" for purposes of our admiralty jurisdiction. *Three Buoys Houseboat Vacations U.S.A. v. Morts,* supra.

We also conclude that Hall has properly demonstrated that he was without "privity or knowledge" over the events which led to the accident in question. In this respect, "'privity or knowledge' generally refers to the vessel owner's personal participation in, or his actual knowledge of, the specific acts of negligence, or conditions of unseaworthiness, which caused or contributed to the accident." *Suzuki of Orange Park, Inc. v. Shubert,* 86 F.3d 1060, 1064 (11th Cir.1996), citing *Coryell v. Phipps,* 317 U.S. 406, 411, 63 S.Ct. 291, 293–94, 87 L.Ed. 363 (1943). While this determination usually requires a threshold finding as to "what acts of negligence or conditions of unseaworthiness caused the accident[,]" *American Dredging Co. v. Lambert,* 81 F.3d 127, 129 (11th Cir. 1996), in this instance, Hall has averred that he had no foreknowledge of, nor any involvement with, the excursion which resulted in the collision, and he has attested to the fact that, prior to the accident, the Lund Pro–V was in seaworthy condition, and was properly equipped for service on the Rainy River. Notably, the Respondents have offered no evidence which even tends to rebut either of these averments. Accordingly, we conclude that, as a matter of law, Hall was without "privity or knowledge" as to the specific acts and conditions which led to the collision of October 15, 1994.

Lastly, we must consider whether the Lund Pro–V is a "vessel," within the meaning of Section 183(a). Citing the Court's decision in *Baldassano v. Larsen,* supra, the Respondents argue that the Lund Pro–V, as a mere "pleasure boat," is not a "vessel," as that term is intended within the Limitation of Liability Act. We disagree.

The term "vessel", as it has been employed in admiralty law, is broadly construed to encompass literally every form of watercraft now in operation. Indeed, our Court of Appeals has observed "that the operation of a boat on navigable waters, no matter what its size or activity, is a traditional maritime activity to which the admiralty jurisdiction of the federal courts may extend." *St. Hilaire Moye v. Henderson,* 496 F.2d 973, 979 (8th Cir.1974), cert. denied, 419 U.S. 884, 95 S.Ct.

151, 42 L.Ed.2d 125 (1974). In the words of the Court:

> Nor may it be contended that the term "vessel" in admiralty law is limited to ships or vessels in commerce. In 1 U.S.C. § 3 the term is defined as follows: "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 46 U.S.C. § 713 provides in part: "[T]he term 'vessel' shall be understood to comprehend every description of vessel navigating on the sea or channel, lake or river. * * * *" These definitions are surely broad enough to encompass the type of boat here involved.

*Id.*

In accordance with this broad definition of our admiralty and maritime jurisdiction, the Supreme Court has historically assumed, without squarely deciding, that the Limitation of Liability Act has application to small watercraft. See, *Coryell v. Phipps*, supra (yacht); *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941)(yacht); *Spencer Kellogg v. Hicks*, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903 (1932) (motor launch). Following this lead, the lower Federal Courts have routinely held that the Act's protections are available to the owners of small pleasure craft. See, e.g., *Richards v. Blake Builders Supply Inc.*, 528 F.2d 745, 748 (4th Cir.1975) (motorboat); *Gibboney v. Wright*, 517 F.2d 1054, 1057 (5th Cir.1975) (racing sloop); *Feige v. Hurley*, 89 F.2d 575, (6th Cir.1937) (motorboat); *Application of Theisen*, 349 F.Supp. 737, 740 (E.D.N.Y.1972) (motorboat); *Petition of Klarman*, 295 F.Supp. 1021, 1022 (D.Conn.1968) (yacht); *Petition of Porter*, 272 F.Supp. 282, 286 (S.D.Tex.1967) (yacht); *Petition of Colonial Trust Co.*, 124 F.Supp. 73, 75 (D.Conn.1954) (cabin cruiser). Thus, as recently as 1977, our Court of Appeals has held, albeit in a footnote, that a small motorboat is a "vessel" within the meaning of

Section 183(a). *Pritchett v. Kimberling Cove, Inc.*, 568 F.2d 570, 573 n. 4 (8th Cir. 1977), cert. denied, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978).

Nevertheless, in *Baldassano v. Larsen*, supra, the District Court determined that the Limitation of Liability Act was not intended to apply to pleasure craft, and that its provisions should not apply to a collision between two small motorboats. In so concluding, the Court was aware that it was departing from precedent, but reasoned that "[t]he spirit of the [Limitation on Liability] Act demands so." *Id.* at 418.[3] As explained by the Court:

> To limit liability in a case such as this would be as outrageous as allowing an automobile owner to limit his liability to the value of his car should he crash while out on a Sunday drive. * * * There will no doubt be a great deal of interest shown in this litigation by many entities standing to profit by the status quo. But this situation cries out for remedial adjudication, and this court cannot ignore the fundamental unfairness of the law as it exists.

*Id.* at 419–20.

In addition, the Court concluded that the boat owner, in *Baldassano*, was not entitled to protection, under Section 183(a), because the collision there occurred with the owner's "privity or knowledge." *Id.* at 420.[4]

The Respondents urge us to adopt the reasoning of *Baldassano v. Larsen*, as our own, arguing that the *Baldassano* Court's determination, that the owners of pleasure craft may not resort to the protections of the Limitation of Liability Act, reflects the "recent trend among those courts which have faced the issue * * *." *Complaint of Roffe*, 724 F.Supp. 9, 10 (D.Puerto Rico 1989). For two reasons, we decline the invitation. First, we note that twice, in recent years, the Supreme Court has reaffirmed that pleasure craft remain "vessels" for purposes of admi-

---

**3.** The *Baldassano* Court recognized that pleasure craft have been traditionally construed as "vessels" for purposes of admiralty and maritime jurisdiction, but the Court expressed the view that "merely because these two pleasure boats— the pontoon and speedboat—are regarded as 'vessels' for the purpose of establishing general admiralty jurisdiction does not mean that they must qualify as such for every provision under

admiralty law." *Baldassano v. Larsen*, 580 F.Supp. 415, 418 (D.Minn.1984).

**4.** For this reason, the Court's determination that the Limitation of Liability Act does not apply to pleasure craft was unnecessary to its decision, and is, in effect, arguable *dicta*.

ralty and maritime jurisdiction. Thus, in *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), the Court held that a complaint, which alleged a collision between two pleasure boats on navigable waters, properly stated a claim within the admiralty jurisdiction of the Federal Courts. As stated by the Court:

> The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually *engaged* in commercial maritime activity. This interest can be fully vindicated only if *all* operators of vessels on navigable waters are subject to uniform rules of conduct. The failure to recognize the breadth of this federal interest ignores the potential effect of noncommercial maritime activity on maritime commerce. * * * The potential disruptive impact of a collision between boats on navigable waters, when coupled with the traditional concern that admiralty law holds for navigation, compels the conclusion that this collision between two pleasure boats on navigable waters has a significant relationship with maritime commerce.

*Id.*, at 674–75, 102 S.Ct. at 2658 [emphasis in original; footnote omitted].

Some nine years later, in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the Court held that an incident involving a fire aboard a pleasure yacht, while the yacht was docked at a Lake Michigan marina, gave rise to admiralty jurisdiction. *Id.* at 362–67, 110 S.Ct. at 2895–98. Notably, in *Sisson*, the action originated as a limitation of liability Petition, under Section 183(a), and, as it had done on prior occasions, the Court assumed, without deciding, that the Limitation of Liability Act had application to pleasure craft. *Id.* at 359, 110 S.Ct. at 2894.

Second, despite the Respondents urging to the contrary, we are not convinced that the Court's reasoning in *Baldassano*, reflects a "recent trend" in the Federal Courts and, in fact, it appears to us that quite the contrary is true. While certain District Courts did follow *Baldassano* in the years immediately following its issuance,[5] by and large, these decisions have not weathered the test of time. Two have been reversed on direct appeal,[6] three have been abrogated by later appellate decisions,[7] one has been disavowed by a later decision of the same District Court,[8] and one has been reversed, albeit on different grounds, by the Supreme Court.[9]

In contrast, our review discloses that the Courts, which have most recently addressed the issue, have uniformly held that the Limitation on Liability Act's protections are available to the owners of pleasure craft. See, *Matter of Guglielmo*, 897 F.2d 58, 60 (2nd Cir.1990); *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225, 1229 (11th Cir.1990); *Matter of Hechinger*, 890 F.2d 202, 206 (9th Cir.1989), cert. denied, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); *In re Young*, 872 F.2d 176, 177 (6th Cir.1989), cert. denied, 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990); *Petition of Keller v. Jennette*, 940 F.Supp. 35, 38–39 (D.Mass.1996); *Complaint of Nobles*,

---

**5.** See, *Complaint of Roffe*, 724 F.Supp. 9 (D.Puerto Rico 1989); *Complaint of Myers*, 721 F.Supp. 39 (W.D.N.Y.1989); *Complaint of Keys Jet Ski, Inc.*, 704 F.Supp. 1057 (S.D.Fla.1989), rev'd, *Keys Jet Ski, Inc. v. Kays*, 893 F.2d 1225 (11th Cir.1990); *Estate of Lewis*, 683 F.Supp. 217 (N.D.Cal.1987); *Matter of Sisson*, 668 F.Supp. 1196 (N.D.Ill.1987), aff'd, *In re Complaint of Sisson*, 867 F.2d 341 (7th Cir.1989), rev'd on other grounds, *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); *Complaint of Shaw*, 668 F.Supp. 524 (S.D.W.Va. 1987), rev'd, 846 F.2d 73 (4th Cir.1988) (Table); *Matter of Lowing*, 635 F.Supp. 520 (W.D.Mich. 1986); *Complaint of Tracey*, 608 F.Supp. 263 (D.Mass.1985).

**6.** See, *Complaint of Keys Jet Ski, Inc.*, supra, and *Complaint of Shaw*, supra.

**7.** See, *Complaint of Myers*, supra; *Estate of Lewis*, supra; and *Matter of Lowing*, supra, abrogated respectively by *Matter of Guglielmo*, 897 F.2d 58 (2nd Cir.1990); *Matter of Hechinger*, 890 F.2d 202 (9th Cir.1989), cert. denied, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990); and *In re Young*, 872 F.2d 176 (6th Cir.1989), cert. denied, 497 U.S. 1024, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990).

**8.** See, *Complaint of Tracey*, supra, which has been recently rejected by *Petition of Keller v. Jennette*, 940 F.Supp. 35 (D.Mass.1996).

**9.** See, *In re Complaint of Sisson*, supra.

842 F.Supp. 1430, 1435 (N.D.Fla.1993); *Greenley v. Meersman,* 838 F.Supp. 381, 384 (C.D.Ill.1993); *Hammersley v. Branigar Organization, Inc.,* 762 F.Supp. 950, 954 (S.D.Ga.1991); *Complaint of Dillahey,* 733 F.Supp. 874, 884 (D.N.J.1990).

Notably many of these Courts shared—at least to some extent—the same jaded view of the continued utility of the Limitation on Liability Act, as was expressed by the Court in *Baldassano.* See, e.g., *Matter of Guglielmo,* supra at 60 ("We appreciate that the inclusion of pleasure craft in the limitation provision seems rather unrelated to the legislative goal of fostering investment in commercial shipping and that this fact has led most commentators on admiralty law to favor exclusion."); *Keys Jet Ski, Inc. v. Kays,* supra at 1229 ("[W]e might agree in this case with the district court that extension of the Limitation Act to pleasure craft such as jet skis is inconsistent with the historical purposes of the Act * * *."); *In re Young,* supra at 177 ("We understand the reasoning of those courts which have found the application of this Act to pleasure boat accidents to be inappropriate."). Nevertheless, these same Courts, as well as the others which have most recently confronted the issue, have reached the conclusion that "[i]f indeed, anything is broken, it is up to Congress to fix it." *In re Young,* supra at 178; accord, *Matter of Guglielmo,* supra; *Keys Jet Ski, Inc. v. Kays,* supra; *Complaint of Nobles,* supra; *Greenley v. Meersman,* supra at 383; *Complaint of Dillahey,* supra. As one Court addressed the matter:

> Judicial anarchy would surely result were an inferior court to disregard both the law and precedent whenever the court's individual sense of "fairness" was offended by either or both. Adherence to the doctrine of *stare decisis* requires that a court resist such impulses. This Court further believes that in a tripartite system of government such as our own, its role is that of an arbiter of disputes influenced and controlled by precedent and the law, not that of a legislator. It is for the Congress, the entity best suited to engage in the complicated and time consuming activity of collecting and analyzing the myriad of economic and policy concerns which are endemic to an issue such as this, to decide whether pleasure boats should be excluded from § 183(a). As such, the Court will decline the invitation to judicially legislate an exclusion to a law many may view as unfair or antiquated.

*Greenley v. Meersman,* supra.

We find this reasoning persuasive, and we adopt it as our own. Therefore, we decline to accept the rationale of *Baldassano,* and we conclude that the Lund Pro–V is a "vessel," within the meaning of Section 183(a).

Having satisfied his burden, and having demonstrated that he is qualified to receive the protections afforded to "innocent" vessel owners, under the Limitation of Liability Act, we conclude that Hall is entitled to Summary Judgment, and we recommend that an Order be entered which limits his financial liability, arising from the collision between The Nunsea III and the Lund Pro–V, to $6,250.00.

**B.** *The Remaining Aspects of this Action.*

█ At the Hearing on the Motion, some suggestion was made that the granting of Summary Judgment would dispose of this action, and would allow for the resumption of the stayed State Court proceedings. We disagree with this suggestion, for we conclude that this Court, quite properly, has jurisdiction over the subject matter of this action, and we recommend that the Court exercise that jurisdiction.

First, the resolution of Hall's Motion has no bearing upon Moeller's Petition, under the Limitation of Liability Act and, therefore, the disposition of Moeller's Petition, as well as the monetary claims against both Moeller and Hall, remain before the Court. Furthermore, we conclude that we properly have jurisdiction over Krueger's, and the Coe Heir's, cross-claims against Ballard's Resort and Mulvey. While it remains uncertain whether Krueger, and the Coe Heirs, have premised their cross-claims upon the Court's admiralty and maritime jurisdiction, or upon the Court's supplemental jurisdiction, see, *Title 28 U.S.C. § 1367,* we believe that either jurisdictional source empowers the Court to entertain the merits of the claims.

■ As might be expected, admiralty and maritime jurisdiction is appropriate when a potential hazard to maritime commerce arises out of an activity which bears a substantial relationship to traditional maritime activity. *Sisson v. Ruby,* supra at 362, 110 S.Ct. at 2895–96; *Foremost Insurance Co. v. Richardson,* supra at 675 n. 5, 102 S.Ct. at 2658 n. 5. Thus, in *Foremost,* the Court found admiralty jurisdiction to be properly founded where, as here, two pleasure craft collided upon a navigable waterway. *Foremost Insurance Co. v. Richardson,* supra at 674–75, 102 S.Ct. at 2658–59. Given the striking similarities between this case and the facts in *Foremost,* we conclude that the propriety of our exercise of admiralty jurisdiction, over the pending cross-claims, is not open to responsible debate.

■ Even if our admiralty and maritime jurisdiction would not lie over the cross-claims, an exercise of our supplemental jurisdiction would be proper under the circumstances here. See, *Title 28 U.S.C. § 1367(a).* Of course, a Court may decline to exercise supplemental jurisdiction over a claim, if any of the following pertain:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the Court has original jurisdiction;

(3) the Court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Title 28 U.S.C. § 1367(c).*

Here, none of these factors support a refusal to exercise our supplemental jurisdiction. The action does not raise novel or complex issues of State law but, instead, the resolution of the cross-claims would appear to involve the straightforward application of well-settled principles of tort law. Nor have we dismissed all of the claims over which we have original jurisdiction, for the disposition of Hall's Motion for Summary Judgment has no substantive effect upon Moeller's Petition for Limitation of Liability.

Moreover, the negligence claims against Ballard's Resort, and Mulvey, do not substantially predominate over the issues raised by Moeller's Petition but, rather, they are closely intertwined. We have already determined that the Lund Pro–V is a "vessel," that the collision between it and The Nunsea III occurred on a "navigable waterway," and that the timing prerequisites, of a Section 183(a) Petition, have been satisfied. Therefore, in addressing the merits of Moeller's Petition for Limitation of Liability, the one issue, which remains to be resolved, is whether the accident occurred with Moeller's "privity or knowledge." As we have noted, however, in making that determination we must ascertain what were the acts of negligence, or the conditions of unseaworthiness, which caused the accident. *American Dredging Co. v. Lambert,* supra. Here, as the parties' submissions have confirmed, the issue of fault is fervidly disputed, and the resolution of that dispute will necessarily implicate both Moeller's Petition, and the cross-claims which have been brought by Krueger and the Coe Heirs.

Finally, the parties to this action direct our attention to no "exceptional circumstances," or to any "compelling reasons," which would militate against an exercise of our supplemental jurisdiction, and we are not aware of any. To the contrary, discovery in this matter is complete, the case has been set for Trial, and no good reason for delay has been shown. As a result, we find no basis to dismiss this action in favor of a State Court proceeding which, pursuant to the Stay we earlier imposed, is in its infancy and, to the extent that a recommendation is required, we commend that the Trial of this matter proceed as it has been scheduled.

NOW, THEREFORE, It is—

RECOMMENDED:

That the Petitioner Dan Hall's Motion for Summary Judgment [Docket No. 27] be granted, and that, pursuant to Title 46 U.S.C.App. § 183(a), his financial liability, for the October 15, 1994 collision, between The Nunsea III and the Lund Pro–V vessel, be limited to the sum of $6,250.00.

### Notice

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by **no later than November 14, 1996,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by **no later than November 14, 1996,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.